# Evans *v.* Wilhite.

### *Bill to Annul a Judgment, and to Enjoin its Enforcement.*

(Decided February 8, 1912. Rehearing denied April 25, 1912. 58 South. 262.)

1. *Judgment; Vacating; Equitable and Statutory Remedy.*—The jurisdiction of equity to set aside a judgment obtained by surprise, mistake or fraud, and the remedy provided by section 5372, Code 1907, are cumulative.

2. *Same; Causes.*—Equity will not restrain or set aside a judgment rendered in the lower court on the ground that the case was not continued in pursuance of an oral agreement.

3. *Same; Judgment Entered Without Notice After Continuance.*— The pleadings and proof examined, and it is held that defendant was not bound to stay in court after the case had been continued to see that the case was not later called for trial, and that the bill made a case for relief, and that the judgment would be set aside, and the execution thereof perpetually enjoined.

APPEAL from Cullman Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Charles M. Evans against J. D. Wilhite, to set aside a judgment obtained in an action at law, and to enjoin its enforcement. From a decree dismissing the bill complainant appeals. Reversed, and a decree entered annulling the judgment, and perpetually enjoining its execution.

J. B. BROWN, for appellant. There are but two questions involved in this case. 1st, does the evidence present a case which shows a meritorious defense to the action at law? And 2nd, was appellant guilty of negligence which concurred with the fraud of appellee in producing the injury complained of. The pleadings were settled on the former appeal.—*Evans v. Wilhite,* 167 Ala. 587. The natural equities in the case are undoubtedly with complainant, as under the facts, he certainly was not negligent.—*So Ry. Co. v. Drake,* 166 Ala. 540; 29 Cyc. 419-A; *Nat. Fert. Co. v. Hinson,* 103 Ala. 536. Under the facts, complainant here did not have due process of law as a continuance had been entered, and he neither received notice that the order would be set aside nor an opportunity to be heard thereon.— 1 Black on Judgments, secs. 221, 226; 43 Am. St. Rep. 525. He had a meritorious defense (Sec. 6110, Code 1907), as the venue was either in Morgan or Lawrence counties, but not in Cullman county.—*Forbes v. Rogers,*

[Evans v. Wilhite.]

143 Ala. 208; *Hogee v. Herzberg,* 141 Ala. 439; *Rand v. Gibson,* 109 Ala. 266. This question was presented by plea, the plea was not tested by demurrer, and he cannot now set up the insufficiency of the plea as a defense to his fraud.—*Memphis Co. v. Martin,* 131 Ala. 277; *Brock v. Forbes,* 126 Ala. 319; *Williams v. Mc-Kissack,* 125 Ala. 544.

F. E. St. John, for appellee. No meritorious defense was shown, and that is one of the requisites.—*Norman v. Burns,* 67 Ala. 348; *Collier v. Faulk,* 66 Ala. 223; *Hartford v. Myer,* 27 Am. St. Rep. 384; 65 Am. St. Rep. 839. It is necessary in cases even of default judgment to show that defendant had a meritorious defense.—*Rice v. Tobias,* 89 Ala. 214; s. c. 83 Ala. 348. A verbal agreement between the parties is not binding. —*Collier v. Faulk, supra.* No negligence or fraud is shown.—*Norman v. Burns, supra.*

MAYFIELD, J.—This is a bill in equity to set aside a judgment in a court of law, because obtained by surprise, accident, mistake, or fraud. The equity of the bill was tested and settled on a former appeal, reported in 167 Ala. 587, 52 South. 845. As was held before in this case, and in *Renfro Bros. v. Merryman,* 71 Ala. 195, this and the statutory remedy provided in section 5372 of the Code are cumulative. The case was subsequently tried on the bill, answer, and proof, and the bill dismissed, and from such decree of dismissal the complainant prosecutes this appeal.

After a careful examination of the pleadings and the proof in this case, we are led to the inevitable conclusion that the complainant was entitled to the relief prayed and that the chancellor erred in dismissing his bill.

19—176

The following facts are indisputably shown by the pleadings and proof, and upon these facts the complainant was entitled to the relief sought:

The complainant lived in Morgan county, and the respondent in Cullman county. Complainant owned a certain mule, which he sold to one Rutherford on credit, taking a mortgage to secure the purchase price, which mortgage was promptly and properly recorded, as required by the statutes. Rutherford traded this mule to respondent, and respondent instituted a prosecution against Rutherford for thus trading mortgaged property, and Rutherford left the state. Complainant personally informed respondent of the fact that he had a mortgage on the mule, but consented for respondent to keep the mule until he had finished making his crop, under the promise from respondent that he would then return the mule to complainant, which promise respondent made good by delivering the mule to complainant at the latter's home in Morgan county. Subsequently respondent heard, through third parties, that complainant had consented for Rutherford to trade the mule, and he thereupon instituted a suit of trover, in Cullman county, against complainant, who lived in Morgan county, as for a conversion of the mule.

The respondent here (plaintiff in the action at law) was represented, in bringing the suit, by an attorney who resided at Cullman; and the complainant here (defendant in the action of trover) was represented by his attorney, who lived in Morgan county.

The defendant in the action of trover, by his attorney, filed a plea in abatement, setting up the fact that he resided in Morgan county, and not in Cullman county. This plea was filed within the time required, and was the only plea filed.

There were communications between the attorneys as to when the case would be set for trial; and on the day it was so set defendant's attorney, in Morgan county, called plaintiff's attorney, over the long-distance phone, for the purpose of arranging for the continuance of the case. The evidence is in conflict as to the exact nature of the agreement as to the continuance.

Defendant's attorney on the same day called up, over the phone, another firm of attorneys in Cullman, and requested them to represent him (the attorney) relative to obtaining the continuance. This firm of attorneys, two of them, conferred with plaintiff's attorney on the morning of the day on which the case was set for trial; but the evidence is in conflict as to exactly what agreement was made; but it is undisputed that the case was regularly called for trial on the morning of that day, and was continued by a separate and regular order shown by the circuit court record. The defendant's evidence shows that the continuance was in pursuance of the various agreements; while the plaintiff's tends to show that it was because the plaintiff or his witnesses were not present, and his attorneys could not prove his case.

It is undisputed that none of the plaintiff's witnesses were present in court, or in attendance, on the day the case was set for trial, and that the plaintiff himself was the only witness examined. It is likewise not controverted that plaintiff himself was not present when the case was called for trial, and when it was continued by the court; but it is shown that he was present, and that neither the defendant nor his attorney was present, when the case was subsequently called up and the continuance set aside and a judgment taken for the plaintiff, and that neither was notified of the purpose to set aside the continuance and take a judgment. It does

appear, however, that the name of the attorney was called by the sheriff, but that no one answered or appeared; it being known to the plaintiff and his attorney that the defendant resided in Morgan county.

The plaintiff himself testified as follows: "I never saw the mule, after I turned it over to Mr. Evans, that I remember. The place where I delivered the mule to Mr. Evans was in Morgan county. Mr. Evans didn't require me to pay for the work of the mule for the year 1907. After Harris Cook told me what he did, and after I saw the witnesses, I went to see Mr. Evans about it. I saw Mr. Evans in front of his house, in his horse lot. Mr. Rutherford was gone at that time, or was reported gone. I told Mr. Evans on this occasion that I understood that he had liberated Rutherford to trade the mule. He said it wasn't true. I didn't tell him who had informed me, and he didn't ask me. That was three months or so after I had delivered the mule to him. I told him I had been to see these witnesses, and they told me that they heard him say so. I never told him who the witnesses were. At the time I filed this suit against Mr. Evans, he was living in Morgan county. He had a permanent residence in that county."

Plaintiff's attorney testified in part as follows: "My recollection is that this case was set regularly for trial. I don't remember, but my recollection is that the judgment was taken either on Friday or Saturday of the last week of the court. [The record shows it was Saturday.] I believe the judgment was taken at the afternoon session of the court. I haven't any independent recollection as to when the case was called; but it was called when I was unable to make out a case, and an order of continuance was entered. I presume the case was called for trial when the continuance was entered. It was continued because I was unable to make out a

case, and I stated this to the court, and also that Mr.
Wilhite might come in, and if he did I wanted to make
motion to have the order of continuance set aside and
make the proof. I am unable to say whether Hutson or
Kilpatrick were in court when the order of continuance
was taken. [The record shows they were.] There was
a plea in abatement on file in the case. I don't remem-
ber how the court treated the plea. * * * I don't
remember seeing Evans or Brindley in court when judg-.
ment was taken. Brindley called me about the case,
and I was going to continue the case for him, until he
told me Hutson and Kilpatrick were going to represent
him. Brindley said he couldn't be in court. My rec-
ollection of the conversation with Brindley is that I told
him the case would not likely be reached until the lat-
ter part of the week, if at all. Then is when he told me
that he had employed Hutson and Kilpatrick to repre-
sent him; that if the case would be reached he couldn't
be there. I don't remember the exact words he used,
whether he said he had employed them, or whether he
had asked them to look after it for him. I wouldn't be
positive; but I am inclined to think it was Hutson that
came to see me about the case. We discussed the ques-
tion of continuing the case. We talked about not being
able to reach the case. The one coming to see me about
it wanted a continuance, and I told him I wanted to
get rid of the case, if we could reach it, and therefore
didn't agree to an absolute continuance, but agreed to
hold it over, in case we could reach and try it. I told
them that if we found we wouldn't be able to try the
case it could be continued. I don't know whether the
deputy sheriff found the attorneys or not; I don't rec-
ollect seeing either of them. I don't remember wheth-
er they were in open court or not when the order of con-
tinuance was made. As an attorney, there was some

doubt in my mind as to making out a case in the matter, unless I was able to make proof of the fact of Mr. Evans' giving his consent to the trading of the property, is my recollection now. It was my impression that the recovery in the case would largely hinge on that question. * * * Mr. Wilhite gave me the names of two witnesses by whom he expected to prove that Evans had consented to the trade of the mule. And I had Mr. Wilhite to try and get them to my office. I never did get them to my office. I think one of them was Rutherford; and I don't believe I would know the other man's name. I don't think I had talked with these witnesses at the time, but later did talk with one of them. I can't say whether they attended court when judgment was taken."—Transcript, pp. 98, 99, 100.

The evidence is unconverted that this complainant, the defendant in the action of trover, was informed by his attorney that the case was continued; and that defendant's attorney, after two or three conversations over the phone with plaintiff's attorney and the associates of defendant's attorney, who were at Cullman, was advised that the case would be, and had in fact been, continued; and the record of the circuit court, before referred to, shows that the case was actually continued by a separate order, entered on motion of the attorneys for both parties.

It is true that plaintiff's attorney says that when the continuance was entered it was understood between him and the trial court that, under certain conditions mentioned by him, it might be set aside; but there is no evidence that the defendant, or his attorney, or the attorney's associates, were parties to such agreement, or had any knowledge thereof; and the order continuing the case does not recite or mention any such agreement or understanding. But it is a regular order, continuing

the cause for the term, on motion of the attorneys for both parties.

We are of the opinion that it would be unconscionable to allow this judgment, procured as the undisputed evidence in this case shows it to have been, to stand; that, notwithstanding the conflict in the evidence, the case was actually continued on motion of the attorneys for both parties. The record so recites. This shows, we think, that the order was made in pursuance of the agreement, and relieves the case of the difficulty that the agreement was not in writing. The record, we think, aids complainant's evidence, if it does not conclusively show, that this oral agreement to continue was executed and carried into effect by an entry of record in open court that the case was continued for the term. After this entry of record, continuing the case for the term, this order should not have been set aside, and the case tried, without notice to the defendant or to his attorney. This record shows that they had no notice of the plaintiff's motion to set aside the continuance and proceed to trial. The defendant or his attorneys were certainly entitled to notice of this motion. While the attorney for the plaintiff testifies that he had an understanding with the court that this order of continuance might be set aside and a trial had, there is nothing to show that the defendant, Evans, or his attorney, was a party to any such agreement or understanding; and the judgment entries are against the contention of the plaintiff in this regard. If the case had not been continued in pursuance of the oral agreement, then we would concur with the chancellor that the cases of *Norman v. Burns,* 67 Ala. 248, and *Collier v. Falk,* 66 Ala. 223, would prevent the relief. But here we find that the oral agreement was consummated and carried into an order of the court. The order of continuance for the

term recites that the parties (both parties), by their attorneys, appeared in open court and moved the court to continue the case for the term, and, without any condition, such as is claimed by the plaintiff or his attorney, that the order should be set aside, if the plaintiff later appeared in court. The judgment entries in this case, we think, confirm the contention of the defendant in the circuit court (the complainant here) that the case was continued in pursuance of the agreement, and that he never had any knowledge or notice that the case would be again called up and tried, if the plaintiff should come in court. The record entries in this case support the contention of the complainant. It is the respondent who must show an agreement that this solemn order of the court, continuing the case for the term, should be set aside and a trial had. After the case was continued for the term, as the record shows it was, there was no duty on defendant to stay in court to see that it was not later called up for trial. ·It should not have been subsequently called up, and a trial had, without notice to the defendant, unless he had consented thereto; and there is no evidence that he or his attorney did so consent, or had any notice thereof.

Mr. Freeman, in his work on Judgments (section 113), says: "A court is justified in vacating a judgment obtained in the absence of the defendant, when he had been led to believe that the cause would not be tried, or had been otherwise misinformed as to the time of trial, and there is.no doubt of his acting in good faith." As before stated, the undisputed evidence in this record shows the conditions stated by Mr. Freeman.

Mr. Black, in his work on Judgments, says: "Where it is apparent that there was an honest agreement between the parties that the case should be continued, and yet the plaintiff, without notice to the defendant, and

in violation of the agreement, enters up a default, or proceeds to trial and procures a judgment, this is good ground for setting aside the judgment."

A case very much like this is that of *Binsse v. Barker*, 13 N. J. Law, 263 264 (23 Am. Dec. 720), in which that court said: "It is apparent that there was an honest agreement between the parties that the cause should be adjourned, and yet the plaintiff below, without notice to the defendant, and in violation of this agreement, proceeded to trial, and obtained a judgment in his absence. Whether the agreement was precedent or subsequent, can make no difference; the defendant has been injured by the want of good faith on the part of the plaintiff, and this court will not sustain a judgment under such circumstances."

As before remarked, it is true that plaintiff's attorney denies the terms of the agreement; but there is no doubt that defendant and his attorney were advised, by information which they were justified in believing, that an agreement for a continuance was had; and it is undeniable that the case was actually continued, and that subsequently, on the same day, it was reopened, in the absence of the defendant and his attorney, and without notice to them of the subsequent action of the plaintiff and of the trial court, and a judgment procured against the defendant.

The case nearest like this, which we have examined, is that of *National Fertilizer Co. v. Hinson et al.*, 103 Ala. 432, 15 South. 844. While the relief therein prayed was denied, the law as announced in that case, is to the effect that relief should be granted in a case in which the facts are such as shown in this case. In that case, the court, on Thursday, publicly announced that all civil cases would be continued for the term, and that all parties could go home. On Saturday thereafter, a judg-

ment by default was taken, on motion of plaintiff's counsel. On a bill filed to set aside that default judgment, the court said: "It is very certain that if complainants had done their duty and filed their plea at the proper time, the court, unless imposed upon, would have taken no action in the case after the public announcement it had made; and, if induced in that case to render judgment by false statements of plaintiff's counsel, their equity to set it aside, upon showing a meritorious defense, would have been clear."

In that case, the relief was denied, because defendant was in default when the case was continued, and the continuance could not and did not cure his default, nor deprive the plaintiff of his right to have a judgment on such default. Such was not the case here. A plea, which it cannot be denied was a defense to the action, was on file, having been filed in time; but this was evidently not called to the attention of the court, else judgment could not have been taken—the plaintiff's own testimony would have proved the plea.

It follows that the decree of the chancellor was erroneous, and it is set aside; and a decree will be here entered, perpetually enjoining the execution of the judgment in the court below.

Reversed and rendered. All the Justices concur.