(122 So. 440)

FOWLER v. FOWLER et al. (6 Div. 245.)

Supreme Court of Alabama. Jan. 24, 1929.

Rehearing Denied May 30, 1929.

454

J. A. Lusk, of Guntersville, for appellant.

Nash & Fendley, of Oneonta, for appellees.

BROWN, J. This is a bill filed by the appellant against appellees, seeking to set aside and annul a proceeding in the probate court of Blount county declaring the appellant to be a person of unsound mind and appointing the appellee Nash as guardian of his estate, and to compel the guardian to account as a trustee in invitum. Moody v. Bibb et al., 50 Ala. 245.

The bill attacks the proceedings in the probate court on two theories: First, fraud in procuring the decree adjudging the complainant to be of unsound mind; and, second, that the proceedings are ex facie void for want of jurisdiction in the probate court to proceed.

The demurrers filed by the respondents assert that the bill is without equity; that the probate court in such matters is a court of record of general jurisdiction, and its proceedings are not subject to collateral attack; that the allegations going to show fraud are the mere conclusions of the pleader, without the averment of facts to sustain such conclusions; that there is a misjoinder of parties defendant in that the guardian and his surety, who are not charged with fraud, are improperly joined, and for misjoinder of causes of action were sustained, and the appeal is from that decree.

The granting of relief against judgments and decrees fraudulently obtained is a matter within the original jurisdiction of courts of equity, and a bill for that purpose is, in its very essence, a direct not a collateral attack, and the fact that the proceedings eventuating in the judgment or decree are regular on their face, affirming jurisdiction in the court to proceed, is not an insuperable obstacle to relief. Evans v. Wilhite, 167 Ala. 587, 52 So. 845; Id. (second appeal) 176 Ala. 287, 58 So. 262; Curry v. Peebles, 83 Ala. 225, 3 So. 622; Mitchell v. Rice, pro ami, 132 Ala. 126, 31 So. 498; Ex parte Smith, 34 Ala. 455; Edmondson v. Jones, 204 Ala. 133, 85 So. 799; Van Fleet on Collateral Attack, § 2; Harman v. Moore, 112 Ind. 221, 13 N. E. 718; Herring et al. v. Ricketts, 101 Ala. 340, 13 So. 502.

In Edmondson v. Jones, supra, the lunacy proceedings were not made exhibits to the bill, and what was there said with reference to collateral attack was limited to the proceedings and decrees of the probate court, for the sale of the property for payment of debts, attached and made exhibits to the bill; and it was there held that the bill seeking to impeach the decree of sale was a direct attack.

It must be conceded that the statute, Code of 1923, § 9579, makes the court of probate, in the appointment of guardians for persons of unsound mind, a court of general jurisdiction, and where the court's jurisdiction has attached, the contrary not appearing of record, the presumption will be indulged that the proceedings are regular. Blount County Bank v. Barnes (Ala. Sup.) 118 So. 460.[1] Yet, by the very terms of the statute, this general jurisdiction cannot attach until an inquisition of lunacy has been held as directed. These statutes declare:

"The court of probate has authority, and it is a duty, to appoint guardians for persons of unsound mind residing in the county, * * * having within the county property

[1] 218 Ala. 230.

requiring the care of a guardian, *under the limitations, and in the mode hereinafter prescribed.*" Code of 1923, § 8103.

"A guardian for a person alleged to be of unsound mind, residing in the county, must not be appointed *until an inquisition has been had and taken as hereinafter directed.*" (Italics supplied.) Code of 1923, § 8104.

Section 8105 provides who may file the petition, and its essential averments, and provides: "If, on the hearing of such inquisition, the person alleged to be of unsound mind is not represented by counsel, the court shall appoint a guardian ad litem to represent and defend for him."

Section 8106 provides the steps necessary to the summoning of a jury and to acquire jurisdiction of the person of the alleged lunacy.

The only notice to the alleged lunatic provided for by the statute, and the only way in which the court can acquire jurisdiction of his person, is to issue "a writ directed to the sheriff to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial," and "by the statute it is made the duty of the sheriff to take the body, without condition." Craft v. Simon, 118 Ala. 625, 24 So. 380; Simon v. Craft, 182 U. S. 427, 21 S. Ct. 836, 45 L. Ed. 1165; Fore v. Fore, 44 Ala. 478.

■ Construing the foregoing statute in pari materia with section 9579, it is too clear for argument that it was not the purpose of the last-cited section to convert the probate court into a court of general jurisdiction in hearing an inquisition of lunacy. In this proceeding, it is a court of statutory and limited jurisdiction, and, in order to sustain the decree adjudging the complainant a person of unsound mind, it must affirmatively appear on the face of the record that all of the necessary jurisdictional steps were taken to complete the court's jurisdiction, and the record cannot be aided by intendment, even on collateral attack. Wiley v. State, 117 Ala. 158, 23 So. 690; Commissioners' Court v. Thompson, 18 Ala. 694; Field's Heirs v. Goldsby, 28 Ala. 225, 65 Am. Dec. 341; Brooks v. Johns, 119 Ala. 417, 24 So. 345; Chamblee v. Cole, 128 Ala. 649, 30 So. 630; Goodwin v. Sims, 86 Ala. 102, 5 So. 587, 11 Am. St. Rep. 21; Miller et al. v. Thompson et al., 209 Ala. 469, 96 So. 481; Ex parte Griffith, 209 Ala. 158, 95 So. 551.

The only matter appearing on the face of the proceedings, made a part of the bill by exhibits—other than the appointment of a guardian ad litem and the acceptance and answer of the guardian ad litem—going to show that the probate court acquired jurisdiction of the person in the lunacy proceedings, is the following recital in the face of the courts decree: "Whereas a writ was issued by said court directed to the sheriff of said county to take the said James A. Fowler, and if consistent with his health or safety, have him

present in court at the place of trial, and the sheriff of said county has executed said writ and made the following return thereon: 'I have executed the within writ and hereby certify that the said James A. Fowler is at his residence and that in my judgment it would be inconsistent with his health or safety to have him present on the trial of the within cause. This the 11th day of April, 1925, George McPherson, Sheriff.'"

This recital is contradicted by the writ and the return thereon, showing that the writ was executed only by summoning the jurors for the trial. The sheriff's return indorsed on the writ is, "I have executed the within by summoning the following named persons," followed by the names of the jurors summoned for the trial issue of insanity.

■ Aside from the fact that the recital in the decree does not affirmatively show that the sheriff executed the writ by taking the alleged lunatic into his custody, the contradiction of the recital in the decree by the record, de hors the decree, destroys the efficacy of this recital to sustain the jurisdiction of the person, and, on the principle stated, it appears that the proceedings are void. Ex parte Griffith, 209 Ala. 158, 95 So. 551.

The notice attached as Exhibit 4 to the bill, issued on the 4th day of April, 1925, directed to the alleged lunatic, purporting to give notice of the filing of the petition and the hour and date of hearing and purporting to have served on the day of the hearing, whether before or after the hour set for the trial it does not appear, was not authorized by the statute, and the probate court was without authority to substitute this for the notice provided by the statute, the service of the writ issued to the sheriff to take the body of the alleged lunatic into his custody, and the service of this notice, though it be assumed that no deceit was practiced in reference thereto, was inefficacious to complete the court's jurisdiction to proceed. 6 R. C. L. 448, § 444; Griggs v. Hanson, 86 Kan. 632, 121 P. 1094, 52 L. R. A. (N. S.) 1161, Ann. Cas. 1913C, 242.

The wise policy of the statute requiring that the sheriff take the person of the alleged lunatic into his custody is to bring the alleged lunatic notice by restraining him of his liberty, so that if he has any mind at all he will realize that he must defend in order to remove this restraint, and, if not, persons interested in his freedom and his property rights may come to his aid. Anything short of this cannot be approved as due process of law. 6 R. C. L. 446, § 442; Simon v. Craft, 182 U. S. 427, 21 S. Ct. 836, 45 L. Ed. 1165.

■ The provisions of the statute authorizing the court to appoint a guardian ad litem to represent the alleged lunatic, if he "is not represented by counsel," presupposes that he has been given notice of the proceeding by the execution of the writ commanding the sheriff to take him into custody, and, in the absence of such notice, the court is without

authority to appoint a guardian ad litem. Herring et al. v. Ricketts et al., 101 Ala. 340, 13 So. 502. We are not unmindful of the several rulings here that a court of chancery, recognized as the guardian of the interest of minors, may appoint a guardian ad litem to represent their interest, without service of process, and, though such proceeding is irregular and vulnerable on direct attack, it is not void. Hamilton et al. v. Tolley, 209 Ala. 533, 96 So. 584. This rule has been applied to the probate court where the interests of minors were involved, but is without application here. Frierson v. Travis, 39 Ala. 150. See Fowler v. Fowler, post, p. 457, 122 So. 444.

The averments of the bill going to show fraud are, in short, that, although the complainant was at the time of the alleged proceeding, and for many years prior thereto had been, a resident and citizen of Marshall county, Ala., the defendants William Godfrey Fowler, Mary E. Wildman, Louisa E. Story, Telitha Ann Ingram, and others not named in the bill entered upon a scheme in combination with each other to deprive the complainant of his property and the control thereof, and inveigled the complainant into temporarily leaving his home and going to the home of said Telitha Ann Ingram and Mary E. Wildman, under a pretense that owing to the expected illness of the wife of Julius A. Fowler, a son of complainant, who was then and there residing in the home of complainant, complainant's wife being dead, and that because of such expected illness of the said wife of Julius A. Fowler, the complainant would be better cared for in the house of said Wildman and Ingram during the illness with which he was then suffering, and that when the health of the wife of Julius was restored, or the temporary cause of her illness passed, he could then return to his home at his pleasure, and provided complainant with a buggy and horse and attendants to carry him from his home to the home of Ingram and Wildman, and within two or three days thereafter, unknown to complainant, the said conspirators caused and procured the said William G. Fowler, with his coconspirators, to go to Oneonta, in Blount county, and there file a petition for an inquisition of lunacy against the complainant; that he had no notice of said proceeding; that while he was of considerable age, he had retained his mental faculties and knew and comprehended what he was doing; "that either on the 10th or 11th day of April, 1925, complainant was at the home of one of his daughters, named as one of the conspirators, and had been there for a day or two, and both of the daughters were present when the sheriff came to the home of his daughters, where he was; that one of his daughters was in the room; that the sheriff said he had a paper for him; that

the other daughter came in and took the paper and carried the paper out of the room; that it was never delivered to him; that the sheriff took charge of him or attempted to take charge of him; that he was in bed, lying down; that he did not get up. The sheriff did not remove him, did not ask him to go with him, and the sheriff left and left the paper with his daughter and he was told that it was a paper, proceeding to investigate a charge of larceny for the stealing of property in the neighborhood, a short while before, and after, he supposed before the grand jury, but he did not say anything to him about it being a proceeding to declare him (complainant) a lunatic and take from him his property; that he was not present at the proceeding in said matter, on the 11th day of April, 1925, nor was he then and there either permanently or temporarily a resident of Blount county; that he was merely on a short temporary visit to the homes of his two daughters."

These averments not only show that the writ designated by the statute to serve as notice to complainant was not executed as the statute requires, but show that by the cajolery and deception of some of the defendants he was inveigled into leaving his home in Marshall county and carried to the home of two of his daughters, alleged to be coconspirators, to deprive him of the use and control of his property; that he was deceived as to the nature of the proceedings, and that he had a perfect defense to the proceeding in Blount county—want of jurisdiction in that court to adjudge him insane—fraud extrinsic of the issue presented on the trial of the inquisition of lunacy, unmixed with fault or negligence on his part: Evans v. Wilhite, 176 Ala. 287, 58 So. 262.

Therefore, whether the decree of the probate court adjudging the complainant to be a person of unsound mind is void for want of jurisdiction, or is voidable for fraud practiced in its procurement, though the guardian is in no way connected with the fraud, he may be called to an accounting as a trustee in invitum, and for this purpose he and the surety on his guardian's bond are properly joined as defendant. Moody v. Bibb et al., 50 Ala. 245; Fidelity & Deposit Co. of Md. et al. v. Hendrix, 215 Ala. 555, 112 So. 117. The rules as to the nature and extent of his liability are stated in Moody v. Bibb et al., supra.

The foregoing is sufficient to indicate that we are of opinion that the circuit court erred in sustaining the demurrers to the bill, and the decree is due to be reversed and is so ordered.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.