(122 So. 444)

**FOWLER v. FOWLER.** (6 Div. 210.)

Supreme Court of Alabama. Jan. 24, 1929.

Rehearing Denied May 30, 1929.

J. A. Lusk, of Guntersville, for appellant.

Nash & Fendley, of Oneonta, for appellee.

THOMAS, J. The review sought is for the sustaining of demurrer to a petition for certiorari.

That petition was for the writ of common-law certiorari to review the proceedings in the probate court, alleged to have been taken and judgment made and rendered without having acquired jurisdiction of the person of the alleged "unsound mind" and proceeded against. 11 C. J. 100, § 26.

The original petition by the son averred:

"That James A. Fowler is a resident citizen of Blount County, Alabama, and has property in his own right located therein, that the said James A. Fowler is a man about eighty-one (81) years of age and that his mind is impaired, or unsound to such extent that he is incompetent to attend to his busi-

458

ness transactions, handle and care for his property; that it would be to the interest of the said James A. Fowler to have a guardian appointed to handle and care for the estate of the said James A. Fowler.

"The premises considered, your petitioner prays that this Court take jurisdiction of this cause, issue all notices, hold such proceedings and make such orders, and such decrees as provided by law in such cases."

■ A common-law certiorari will be awarded when there is no adequate remedy by appeal; and only then to review matters of record. Dean v. State, 63 Ala. 153; State v. Southern Cotton Oil Co., 124 Ala. 523, 27 So. 306; Memphis & Charleston Railroad Co. v. Brannum, 96 Ala. 461, 11 So. 468; City of Decatur v. Brock, 170 Ala. 149, 158, 54 So. 209. However, where a right of appeal is provided, it must be adequate to correct or remedy the wrong or defect in question. Independent Pub. Co. v. American Press Ass'n, 102 Ala. 475, 15 So. 947. In Dean's Case, supra, Mr. Chief Justice Brickell declared of the office of the writ: "A certiorari, at common law, was a revisory remedy, intended only for the correction of errors of law apparent on the record; and was not a substitute for an appeal, nor allowed for the correction of errors of fact, which were properly revisable on appeal." And in Ex parte Slaughter, 217 Ala. 515, 116 So. 684, the function of the writ of certiorari at common law is thus declared: "The function of the writ of certiorari at common law extends to the question of jurisdiction of the inferior tribunal and the external validity and regularity of the proceedings, but not to its intrinsic correctness."

■ The usual office of the writ is to inquire into and review judicial determinations made without jurisdiction or in excess of the jurisdiction conferred. 1 C. J. 10. In City of Decatur v. Brock, 170 Ala. 149, 54 So. 209, Mr. Chief Justice Anderson observed of assessments for municipal improvements that the statute gave the right of appeal, yet, if the assessment attempted to be made be void, there would be nothing to support an appeal. This observation is pertinent, if the judgment and order of adjudication be void. We will examine the record as a direct attack on the proceeding exhibited by the petition, to ascertain or determine whether it was made without jurisdiction in the premises. See Edmondson v. Jones, 204 Ala. 133, 85 So. 799, for authorities. In Singo v. McGhee, 160 Ala. 250, 251, 49 So. 290, the Chief Justice observed, if the record shows the omission of jurisdictional averments, notwithstanding the judgment or decree may recite the existence of the same, the decree must fall on direct attack, and the difference in that respect, of direct and collateral attacks, is defined.

■ In respects here pertinent, the present statute is that which existed and was construed in this jurisdiction since the Code of 1852. The amendments are contained in section 8108 of the Code, providing the "court shall enter a decree accordingly." The probate court had no original jurisdiction to determine or adjudge a person of "unsound mind," and under the jurisdiction conferred or rested in said court as a special tribunal "the court" is required to enter the decree pursuant to the verdict of the jury; that court consisting of the judge acting under the statute and in strict accordance therewith, and the jury summoned in the manner prescribed by law and so acting and trying the facts. Laughinghouse Case, 38 Ala. 257; Craft v. Simon, 118 Ala. 625, 24 So. 380. The special and statutory proceeding must show a statutory compliance with the special authority by which the extraordinary jurisdiction is authorized to be exercised. Authorities in Edmondson v. Jones, 204 Ala. 138, 85 So. 799.

■ We may advert to Ex parte Griffith, 209 Ala. 158, 95 So. 551, where the presumptions that obtain on direct and collateral attack upon the exercise of special, limited, or inferior jurisdiction are again discussed, and held that the record must show on its face every fact necessary to give special jurisdiction, and that the recital of facts in the order or judgment, giving special jurisdiction, are prima facie evidence thereof, only in "a collateral proceeding"; that the mere "recitals of facts [in a decree of a court of limited jurisdiction] cannot give special jurisdiction," though they may be prima facie evidence of the existence of jurisdictional facts. This is in accord with Singo v. McGhee, 160 Ala. 251, 253, 49 So. 290.

Before consideration of the specific requirements of our statute, we may observe the requirements of due process and of that right under amendment to the Federal Constitution. Lord Chancellor Erskine, in 1806, declared that a writ of notice must be served on one who is made the subject of a commission of lunacy; that the right to be present at the execution of that commission and to be heard before condemnation was "his privilege." Ex parte Crammer, 12 Ves. Jr. 444, 455. This natural right found expression in the due process clauses of the Constitution of the United States (Amendments 5 and 14) and in the several Constitutions of Alabama (Const. 1819, art. 1, § 10; 1861, art. 1, § 10; 1865, art. 1, §§ 7, 14; 1868, art. 1, § 8; 1875, art. 1, §§ 7, 8, 14; 1901, §§ 6, 7, 13). Early decisions of our courts are to the effect that proceedings for inquisition of lunacy and appointment of a guardian of a non compos without notice are coram non judice and void. McCurry v. Hooper, 12 Ala. 823, 46 Am. Dec. 280; Eslava v. Lepretre, 21 Ala. 504, 56 Am. Dec. 266; Fore v. Fore, 44 Ala. 478, 483; Moody v. Bibb, 50 Ala. 245, 247; Ex parte Trice, 53 Ala. 546; Molton v. Henderson, 62 Ala. 426, 430.

Interpretation by the Supreme Court of the United States of due process of law (the inhibition against the national government in the Fifth Amendment to the Constitution and against the state in the Fourteenth) is made in cases where there was not sufficient notice or opportunity to be heard provided by law or given to those assailed in property or person in judicial proceedings. See other authorities collected in Edmondson v. Jones, 204 Ala. 138, 139, 85 So. 799.

In Simon v. Craft, 182 U. S. 427, 435, 21 S. Ct. 836, 839 (45 L. Ed. 1165), Id., 118 Ala. 625, 24 So. 380, Mr. Chief Justice White said of the provisions of our statutes touching the Federal Constitution:

"Indeed, it would seem that it was not urged before the supreme court of Alabama that the statutes of that state failed to provide for notice, and that court assumed in its opinion that no question of that character was presented. As a matter of fact, a copy of the writ which issued and which embodied a notice of the date of the hearing of the proceedings in lunacy is shown by the record to have been actually served on Mrs. Simon. As early as 1870 the supreme court of Alabama in Fore v. Fore, 44 Ala. 478, 483, held that the service of the writ upon a supposed lunatic was the notice required by the statute and brought the defendant into court, and that if he failed to avail of such matters of defense as he might have, he must suffer the effect of his failure to do so."

In the statement of facts prepared by Mr. Justice White, it is recited that Mrs. Simon was taken into custody by the sheriff pursuant to the writ issued pursuant to statute, and that said official further handed "her a copy of said writ." The Justice said of this feature of notice:

"The contention now urged is that notice imports an opportunity to defend, and that the return of the sheriff conclusively established that Mrs. Simon was taken into custody, and was hence prevented by the sheriff from attending the inquest or defending through counsel if she wished to do so in consequence of the notice which she received. It seems, however, manifest—as it is fairly to be inferred the state court interpreted the statute—that the purpose in the command of the writ, 'to take the person alleged to be of unsound mind, and, if consistent with her health or safety, have her present at the place of trial,' was to enforce the attendance of the alleged non compos, rather than to authorize a restraint upon the attendance of such person at the hearing. In other words, that the detention authorized was simply such as would be necessary to enable the sheriff to perform the absolute duty imposed upon him by law of bringing the person before the court, if in the judgment of that officer such person was in a fit condition to attend, and hence it cannot be presumed, in the absence of all proof or allegation to that effect, that the sheriff in the discharge of this duty, after serving the writ upon the alleged lunatic, exerted his power of detention for the purpose of preventing her attendance at the hearing, or of restraining her from availing herself of any and every opportunity to defend which she might desire to resort to, or which she was capable of exerting. The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied we are governed by the substance of things, and not by mere form. Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 20 S. Ct. 230, 44 L. Ed. 747. We cannot, then, even on the assumption that Mrs. Simon was of sound mind and fit to attend the hearing, hold that she was denied due process of law by being refused an opportunity to defend, when, in fact, actual notice was served upon her of the proceedings, and when, as we construe the statute, if she had chosen to do so, she was at liberty to make such defense as she deemed advisable."

Mr. Justice Coleman said of the process and return required under the statute, and the compliance therewith in the Craft v. Simon Case, 118 Ala. 625, 636, 637, 24 So. 380, 383:

"The statute is that the sheriff be directed to take her body, and if consistent with health, etc. By the statute *it is made the duty of the sheriff to take the body, without condition,* and if consistent with health and safety to have her present at the trial. The writ issued directed the sheriff, 'if consistent with health and safety to take her body,' etc. The return of the sheriff shows that the writ was executed in accordance with the statute. It is: 'I executed the within *writ of arrest by taking into my custody* the within named Jetta Simon, *and handing her a copy of* said writ, and, as it is inconsistent with the health or safety * * * to have her at the place of trial, * * * she is not brought before the court.' Technically the writ of the judge was not accurately correct. Its meaning, however, is evident. *The sheriff's return was complete and regular in every respect.* We do not doubt she was brought into court in the manner prescribed by statute, and that she was subject to its jurisdiction. The second objection cannot be sustained." (Italics supplied.)

We have noted that, in respects here pertinent, the statute comes to us unchanged as heretofore construed by this court. Code of 1923, §§ 8103–8119.

Taking account of our earlier cases in proceedings for inquisitions in which due process of law has been considered, it is observed of Fore v. Fore, 44 Ala. 478, 483, that the defendant in petition was held to have been notified by the "writ of arrest * * * duly served upon him"; in Moody v. Bibb,

50 Ala. 245, 247, the appointment of a guardian was held void by reason of failure to bring before the court "in any manner" the non compos, who "had no notice whatever of the proceeding to declare him a lunatic"; in Ex parte Trice, 53 Ala. 546, 548, the defendant had been arrested and was at large on bond at the time the order affecting her sanity was made, it being held that such proceeding was without authority of law—that "no man can be pronounced insane, deprived of his liberty, or of his property, and its control, and subjected to the dominion of others, by any judicial proceeding, of which he has not notice, and the right and opportunity of being heard in opposition to it."

In the Laughinghouse Case, 38 Ala. 257, the inquisition had before the sheriff, in the absence of the probate judge, was declared coram non judice. In Molton v. Henderson, 62 Ala. 426, by Judge Brickell, where the attempted inquisition of lunacy had in the probate court was without personal notice to the alleged non compos, the appointment of a guardian and all proceedings by such guardian for a sale of his lands were declared void. Of this case it is interesting to note that the petition contained the averment that it was filed by a brother of the person sought to be adjudged non compos mentis, and that at the time of such proceeding the defendant in the petition was an inmate of the lunatic asylum at Columbia, S. C., and that the two cases now to be considered are cited as governing.

In McCurry v. Hooper, 12 Ala. 823, 46 Am. Dec. 280, Mr. Justice Dargan declared of the purported inquisition of lunacy directed against one Patrick that the application therefor was by "friends," without disclosing who were the friends. The record showed the writ was issued, the jury certified Patrick was non compos mentis, and a guardian was appointed, but it failed to disclose that Patrick had notice of the time and place of the inquisition or that the jury saw him. On such ex parte proceeding in the orphans' court the guardian was invested with control of the property and person of said Patrick. Of this procedure, in a suit in detinue to recover property disposed of by such alleged guardian, the court said:

"It is a fundamental principle of justice, essential to the rights of every man, that he shall have notice of any judicial proceeding that is about to be had, for the purpose of divesting him of his property, or the control of it, that he may appear and show to them, who sit in judgment on his rights, that he has not lost them by the commission of a crime; nor should those rights be taken from him by reason of any misfortune. That he has the right to appear before the jury, and the court, and to show that he is not insane, that he, and his property should not be put in charge of another is a self-evident truth, and is denied by no legal authority. See 12 Ves. 444; Ex parte Cranmer, Stock on Lunacy, 100."

The court said of the lack of notice:

"It does not appear that George L. Patrick had any notice whatever, of the time, and place, of making this inquisition; or that the jury saw him, or made any application, or effort to see him. It does not appear that he had any notice of the application to the court for the writ, or that he had any notice of the action of the court, on the return of the writ."

Proceedings for the appointment of a guardian, had upon no other assurance of the fact of Mrs. Eslava's lunacy than the petition of her husband, without notice to her, and without the issuance of a writ de lunatico inquirendo, constituted the subject of consideration in the leading case of Eslava v. Lepretre, 21 Ala. 504, 522, 56 Am. Dec. 266. The court said:

"This appointment was made upon no other assurance of the fact of Mrs. Eslava's lunacy than the petition of her husband, without notice to her, and without the issue of a writ de lunatico inquirendo, and the verdict of a jury thereon. Without the issue of this writ, and the finding of a jury, the County Court judge had no power to declare her a lunatic, or to appoint a guardian for her. These proceedings are indispensable to give the County Court jurisdiction to make the appointment; and as they were not had, and that court is one of limited jurisdiction, the proceedings on the appointment of guardians are coram non judice and void."

This case is reported in 56 Am. Dec. 266, as the leading case on the subject of notice to a party proceeded against in the orphans' or probate court to declare him non compos mentis and to appoint a guardian for him.

■ It follows that in an inquisition by order of the probate court to ascertain whether an individual is non compos mentis, if the proceedings are held without the required notice and opportunity to be heard to the person proceeded against, the verdict of the jury in such case and judgment thereon are void, and evidence for no purpose to effect the rights of the individual so proceeded against or of any one claiming under or through him. That is, if the alleged non compos did not have the required personal notice, or, if insane, such notice as amounted to personal notice (as having been in the custody of the sheriff of the county where the inquisition is held and of his residence) of the pendency of the inquisition of lunacy against him, on such inquisition the appointment by the probate court of a guardian for such person and proceedings had by such guardian for the sale of his lands or properties, without notice, are void.

In the Code of 1886, the meaning of the words "person of unsound mind" in sections

8103, 8105, 8108, coming from the Code of 1852, was defined to "include idiots, lunatics, or the insane." Code, § 8119. This was no doubt to incorporate into the statute the definitions of unsoundness of mind contained in Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Stubbs v. Houston, 33 Ala. 555, 566 (contests of wills); In re Carmichael, 36 Ala. 514, 522 (inquisition); White v. Farley, 81 Ala. 563, 567, 8 So. 215, where the bill was in equity for redemption of lands; and Rawdon v. Rawdon, 28 Ala. 565, where the bill was for divorce or annulment on the grounds of insanity. The averment of the petition, that James A. Fowler's "mind is impaired, *or unsound to such extent* that he is incompetent to attend to his business transactions, *handle and care for his* property, that it would be to his interest," was the statement of the required jurisdictional fact. The petition was not tested by demurrer.

The statutory provisions required to be observed in a court of special and limited jurisdiction for such inquisition must be strictly followed, before one not presumed to be of unsound mind be deprived of his liberty and freedom of person and the right of direction of his properties.

The record must show that the court had acquired jurisdiction. The record before us shows the defendant was not taken into custody by the sheriff on execution of the required writ; was not before the court and the jury rendering the verdict and judgment. And a notice by the sheriff not provided by law did not suffice to confer jurisdiction in the premises and to the end adjudged.

This question has, however, been decided in Fowler v. Fowler, ante, p. 453, 122 So. 440, this day decided.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.