50 So.2d 408

**PATTERSON et al. v. DOWNS et al.**

**5 Div. 508.**

Supreme Court of Alabama.

Jan. 11, 1951.

Rehearing Denied Feb. 22, 1951.

J. B. Atkinson, of Clanton, and Rives & Godbold, of Montgomery, for appellants.

·Omar L. Reynolds, A. B. Foshee and Reynolds & Reynolds, all of Clanton, for appellees.

STAKELY, Justice.

This is an ejectment suit filed by Tommie Patterson and others, appellants, against Roy Downs and Pearlie Downs, appellees. The only question presented on this appeal is the correctness vel non of the ruling of the lower court in admitting in evidence certain proceedings in the Probate Court of Chilton County for revocation of an insanity finding and letters of guardianship. By reason of the ruling the plaintiffs in the lower court, appellants here, took a nonsuit. Hence this appeal.

On March 4, 1941 Ulysses Patterson filed a petition in the Probate Court of Chilton County to have Emma Patterson Murphy, his mother, declared of unsound mind. As a result of these proceedings a decree was rendered that Emma Patterson Murphy was a person of unsound mind and C. O. Jones was appointed as her guardian.

On October 9, 1942 Emma Patterson Murphy filed in the same court a petition for revocation of the insanity proceedings against her and for revocation of the letters of guardianship. The record of this proceeding, which was filed under § 16, Title 21, Code of 1940, does not disclose any cita-

tion or notice served on Ulysses Patterson nor does it show citation upon the guardian C. O. Jones, although it does show an acceptance of notice by the guardian.

On October 9, 1942 pursuant to these latter proceedings the Probate Court of Chilton County decreed that Emma Patterson Murphy had been restored to sanity. On January 18, 1943 Emma Patterson Murphy executed a deed to the appellee and his wife purporting to convey the land in question involved in this case. It is stipulated and agreed that there was no change in the mental condition of Emma Patterson Murphy between the date of the decree finding her restored to sanity, October 9, 1942, and the date on which she executed the deed to the appellee and his wife, January 18, 1943.

Subsequent to the execution of the deed Emma Patterson Murphy died intestate and the appellants as some of her heirs at law have succeeded to such rights as the decedent may have had. Subsequent to the deed from Emma Patterson Murphy, Pearlie Downs, the wife of appellee, conveyed to appellee her interest in the land.

When the case came on for trial a jury was waived by the parties for this trial only. Appellee offered in evidence the official court file in the proceedings of October 9, 1942, containing all the documents read into that proceeding, including the decree of the probate court which declared Emma Patterson Murphy restored to sanity. The appellants objected on the grounds that the proceedings were void in that the record disclosed no citation served on Ulysses Patterson and further that it disclosed no citation served on C. O. Jones, the guardian, and further that the decree in the proceeding was void in that the record failed to show affirmatively that citations had been served either on said Ulysses Patterson or C. O. Jones. At the time both Ulysses Patterson and C. O. Jones were alive and resided in Chilton County, Alabama. The objections were overruled and the official court file was admitted in evidence as conclusive and res adjudicata of the mental condition of Emma Patterson Murphy as of October 9, 1942. The appellants excepted to this ruling, calling attention of the court to the fact that it was stipulated and agreed

between the parties that the mental condition of Emma Patterson Murphy did not change between the date of the decree of October 9, 1942 and the date of the execution of the deed to appellees. By reason of the rulings a voluntary nonsuit was taken as aforesaid and from this ruling this appeal has been prosecuted.

It must be conceded that the attack here on the proceedings to revoke the insanity finding and the letters of guardianship is a collateral attack. Williams v. Overcast et al., 229 Ala. 119, 155 So. 543. So it becomes important to determine whether the court in these proceedings was acting as a court of general jurisdiction or a court of limited and statutory jurisdiction. This is true because where a court of general jurisdiction has exercised its powers, it will be presumed, unless the contrary appears of record, that all the facts necessary to give the court jurisdiction were duly found and every step taken. Silence of the records of the court is not sufficient to create a presumption of lack of jurisdiction. It is only where the face of the record shows a want of jurisdiction that its proceedings will be declared void on collateral attack. Blount County Bank v. Barnes, 218 Ala. 230, 118 So. 460; White v. Simpson et al., 124 Ala. 238, 27 So. 297. But if the court is of limited jurisdiction, its jurisdiction being statutory, the requirements of the statute must be strictly complied with, which must affirmatively appear from the record. Fowler v. Fowler, 219 Ala. 453, 122 So. 440; Wiley v. State, 117 Ala. 158, 23 So. 690; Chamblee v. Cole, 128 Ala. 649, 30 So. 630.

It is argued with great earnestness that the proceedings under § 16 et seq., Title 21, Code of 1940, to revoke the finding of insanity and the letters of guardianship were in a court of general jurisdiction. The argument is based on the idea that in § 278, Title 13, Code of 1940, courts of probate are given original and general jurisdiction as to "the appointment and removal of guardians for minors and persons of unsound mind." But this position is contrary in principle to the decision of this court in Fowler v. Fowler, supra, where inquisition proceedings were had under § 9 et seq., Ti-

tle 21, Code of 1940. There has been legislative adoption of the interpretation placed on these statutes because after this interpretation the statutes were carried into the code without change. Ex parte Thompson, 249 Ala. 12, 29 So.2d 287. In Fowler v. Fowler, supra, this court said: "Construing the foregoing statute in pari materia with section 9579, it is too clear for argument that it was not the purpose of the last-cited section to convert the probate court into a court of general jurisdiction in hearing an inquisition of lunacy. In this proceeding, it is a court of statutory and limited jurisdiction, and, in order to sustain the decree adjudging the complainant a person of unsound mind, it must affirmatively appear on the face of the record that all of the necessary jurisdictional steps were taken to complete the court's jurisdiction, and the record cannot be aided by intendment, even on collateral attack. * * *" Fowler v. Fowler, 219 Ala. 453, 455, 122 So. 440, 442.

In Fowler v. Fowler, supra, it was conceded that § 9579, Code of 1923, now § 278, Title 13, Code of 1940, makes the court of probate a court of general jurisdiction in the appointment of guardians for persons of unsound mind. So assuming that this statute makes the probate court a court of general jurisdiction so far as the removal of guardians of persons of unsound mind is concerned, yet on the principle established in Fowler v. Fowler, supra, it was not the purpose of § 278, Title 13, Code of 1940, to convert the probate court into a court of general jurisdiction in the proceedings to determine the mental status of Emma Patterson Murphy when she sought to have the letters of guardianship revoked. In providing for these proceedings § 18, Title 21, Code of 1940 states that "like proceedings must be had as upon the original inquisition".

We conclude that the court in the proceedings here involved was acting as a court of limited and statutory jurisdiction. So it becomes necessary to see what is the result of this conclusion.

In Fowler v. Fowler, 219 Ala. 457, 122 So. 444 and in Fowler v. Fowler, supra,

this court held that since the probate court was acting as a court of limited and statutory jurisdiction in the proceedings to declare a person of unsound mind, the requirements of the statute providing for these proceedings must be strictly complied with. In view of what we have said, it is also true that in the proceedings to revoke the finding of insanity and the revocation of letters of guardianship, the provisions of the statute must be strictly complied with in order for the court to have jurisdiction. In the case at bar the record fails to show that the person who instituted the original insanity proceedings, the son of Emma Patterson Murphy, was given notice. Section 17, Title 21, Code of 1940 provides that such person "must be cited to appear and show cause against it." An examination of the next succeeding section, which is § 18, Title 21, Code of 1940, shows that if the guardian or the person at whose instance the inquisition was had and taken appears and denies in writing the allegations of the application, the court must appoint a day "for the trial of such contest," must cause a jury to be summoned and, as we pointed out above, "like proceedings must be had as upon the original inquisition". We think it clearly appears from the foregoing portion of § 18, Title 21, Code of 1940 that the contest of the application here provided for contemplates an adversary proceeding. Fowler v. Fowler, 219 Ala. 457, 122 So. 444. This is evidently on the theory that the community, the family of the incompetent and the incompetent himself deserve to be protected where it is sought to set aside the original finding of insanity and have the letters of guardianship revoked. Since this proceeding is an adversary proceeding, it is elementary that adversary rights cannot be determined without affording the opportunity to be heard by the party or parties who may be affected, these being the parties expressly set forth in the statute.

We are not dealing with a situation as provided for in the latter part of § 18, Title 21, Code of 1940 where there is no contest of the allegations of the application and the court is satisfied with the truth thereof. Nor are we dealing with a situation provided for in § 20, Title 21, Code of 1940.

In Cockrill v. Cockrill, C.C., 79 F. 143, cited by the appellee, the statutes of Missouri, which were there involved, did not require any notice as is required here. And so in that case the court held that the want of notice at the worst was an irregularity which could not be taken advantage of in a collateral proceeding.

 We think it clearly appears that even though the attack here is collateral, the proceedings show on their face that the court lacked jurisdiction and, therefore, its finding is void. In view of this conclusion as to want of notice to Ulysses Patterson, we find it unnecessary to consider the failure of the record to show citation on the guardian C. O. Jones. It results that the court was in error in admitting in evidence the proceedings in the probate court in which the finding of insanity of Emma Patterson Murphy was revoked and letters of guardianship revoked.

Reversed and remanded.

BROWN, FOSTER and LAWSON, JJ., concur.