58 So.2d 757

### MOSES v. TARWATER.

6 Div. 315.

Supreme Court of Alabama.

April 10, 1952.

Rehearing Denied May 15, 1952.

Walter G. Woods, Tuscaloosa, for appellant.

McCorvey, Turner, Rogers, Johnstone & Adams and C. M. A. Rogers, Mobile, McQueen & McQueen and Jas. Morrisette, all of Tuscaloosa, Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for appellee.

PER CURIAM.

This appeal is from an order made by Hon. Reuben H. Wright, Judge of the Sixth Judicial Circuit, remanding the petitioner, Dr. Alfred G. Moses, to the custody of the Superintendent of Bryce Hospital, a State Institution for the treatment of insane persons, located at Tuscaloosa, Alabama. The appeal is authorized by § 369, Title 15, Code of 1940, which dispenses with a bill of exceptions and assignment of error.

In said habeas corpus proceedings, the petitioner seeks his discharge on the ground that in the proceedings for his commitment conducted by Norvelle R. Leigh, Jr., as Judge of Probate of Mobile County, in that without notice to petitioner he was denied due process of law under said ex parte proceedings under the statutes. The statutes which petitioner attacks as unconstitutional are §§ 208, 210, Title 45, Code of 1940. The basis of his contention is that said § 210 leaves the right of petitioner to notice and hearing to the discretion of the Judge of Probate, ignoring the provisions of the Constitutions, both State and Federal, that no person shall be deprived of his liberty without due process of law.

The trial was had before the Judge and a jury, resulting in the order appealed from remanding petitioner to the custody of the Superintendent of Bryce Hospital. The habeas corpus proceedings are authorized by § 3, Title 15, Code of 1940. The power

to hear the proceedings is vested in the Judge, not in the Court. Code of 1940, Title 15, §§ 6 and 7. At the hearing Judge Wright denied the petitioner's contention, sustained the constitutionality of the statutes and upheld the validity of the commitments made by Judge Norville R. Leigh, Jr.

Among the other averments in the petition we find the following: "Your petitioner is sane and is entitled to his liberty." A statement of the substance of the evidence is made by the trial Judge and certified by him to be such. We quote from the statement which is authorized by § 369, Title 15, Code of 1940, as follows:

"The evidence was overwhelming that Dr. Moses was insane and should not be discharged and the jury so found, and the Court so adjudged and determined.

"This is a sad case but the Court is convinced that the jury verdict is right and should be sustained both for the safety and well being of the public and of Dr. Moses."

It is familiar law that the constitutionality of a law will not be considered on appeal unless essential to the decision of the actual case before the court. State ex rel. Knox v. Dillard, 196 Ala. 539, 72 So. 56.

The judgment of the trial Judge remanding the petitioner to the custody of the Superintendent of Bryce Hospital is affirmed without prejudice. Code of 1940, Title 15, § 3; 25 Am.Jur. § 156, p. 250.

Affirmed.

LIVINGSTON, C. J., and FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

The petitioner seeks his discharge from Bryce Hospital, a State Institution for the treatment of insane persons, on two grounds. The first is that the statutes under which he was committed to said institution are violative of the due process clauses of the Constitutions, both State and Federal, in that §§ 208 and 210, Title 45, Code of 1940, leave to the discretion of the probate judge of the county of petitioner's residence whether he shall be committed with or without notice and a hearing. The second is that he is now sane and illegally restrained of his liberty.

The petition and the exhibit thereto attached show that after an ex parte investigation by the Judge of Probate of Mobile County, at which the petitioner was not present and of which he was not informed or advised, he was committed to and confined in Bryce Hospital, where he has remained up to and including the time of the filing of this petition. On the filing of the petition with Hon. Reuben H. Wright, one of the Judges of the Sixth Judicial Circuit of Alabama, the petitioner demanded a trial by jury. A jury was impaneled and a hearing had before Judge Wright and the jury, resulting in a verdict by the jury and a declaration by the Judge that the petitioner is insane and he was remanded to the custody of the superintendent of said institution.

Following the requirements of § 369, Title 15, Code of 1940, the trial judge filed as a part of the record a summary of the evidence adduced at the hearing, concluding with the statement that, "The evidence was overwhelming that Dr. Moses was insane and should not be discharged and the jury so found and the court so adjudged and determined."

In his return to the writ J. S. Tarwater, Supt. of the Alabama State Hospital, states that he is the Superintendent of Alabama State Hospitals and that his return is made in his official capacity and that as such Superintendent he has in his custody Dr. Moses. In his return he further states:

"3. Dr. Alfred G. Moses was originally committed to Bryce Hospital at Tuscaloosa, Alabama, as a paying insane patient, in accordance with a committment signed by Norvelle R. Leight, Jr., Judge of Probate of Mobile County, Alabama, and dated February 21, 1946, a copy of which is attached as Exhibit 'A' and made a part of this return. He was received and admitted at

Bryce Hospital under said committment on February 22, 1946, and remained there as such a patient until on the application of his wife he was furloughed to her custody on August 13, 1946, and later discharged February 13, 1947, under the provisions of Sections 218 and 219, Title 45, Code of 1940, on the belief and hope that he had then been restored to a normal or comparatively safe and good mental condition sufficiently long to warrant the opinion on the part of the Superintendent that he ought to be returned to his home.

"4. Thereafter, he was again committed to Bryce Hospital as a paying insane patient by committment of the Honorable Norvelle R. Leigh, Jr., Judge of Probate of Mobile County, Alabama, dated April 14, 1948, and re-admitted on April 15, 1948.

"5. Dr. Moses is now in my custody as Superintendent of said Hospital as a paying insane patient at Bryce Hospital under and by virtue of the authority of the said writ signed by the Judge of Probate of Mobile County, Alabama, dated April 14, 1948, a copy of which is attached as Exhibit 'B' and made a part of this return.

"6. On the advice of counsel it is denied that said Alfred G. Moses was committed under a law of the State of Alabama which is unconstitutional and void in that it deprives the said Alfred G. Moses of his liberty without due process of law as guaranteed to him under the Constitution of the United States of America and under the Constitution of the State of Alabama and it is also denied on advice of counsel that the said Alfred G. Moses is now being deprived of his freedom and civil liberty contrary to the Constitution of the United States of America and contrary to the Constitution of the State of Alabama * * *."

As a part of said return and attached as Exhibit A thereto are two certificates of Norvelle R. Leigh, Jr., Judge of Probate of Mobile County, the first being made on the 21st of February, 1946, and the second on the 14th of April, 1948, containing the following statement: "* * * it having been alleged to me that Dr. Alfred G. Moses, a resident of said County, is insane, and that his own and public welfare demand that he be sent to the Hospital for insane persons for custody and treatment, pursuant to the statutory provisions in such cases, I have called before me the following Credible witnesses Mrs. Birdie F. Moses, Claude M. Land, Mrs. L. W. Uber, and Dr. Henry B. Gwynn, M. D, a reputable physician, practicing medicine in the State, and having examined them under oath, and otherwise fully investigated the facts of the case, *with the said Dr. Alfred G. Moses, not present in court,* I hereby certify that sufficient proof has been adduced before me to satisfactorily show that the said Dr. Alfred G. Moses is so defective mentally that he ought to be committed to the Hospital for insane persons for safe keeping and treatment." [Italics supplied.]

In a motion duly sworn to, appellant's attorney alleges the following facts:

"Your petitioner further shows that the said Dr. Alfred G. Moses was committed upon the information and belief of this petitioner upon a complaint by one Birdie Feld Moses, the wife of the said Dr. Alfred G. Moses, and that the wife of the said Dr. Alfred G. Moses has requested the said Dr. J. S. Tarwater to allow no one to visit the said Dr. Alfred G. Moses without the consent of the immediate family. That this rule of allowing no visitors without the consent of the family is a hospital rule invoked by the said Dr. J. S. Tarwater himself, and promulgated by the said Dr. J. S. Tarwater. Your petitioner further avers that it is his belief that to deny him the privilege of visiting the said Dr. Alfred G. Moses will deprive the plaintiff of a fair trial in the said cause. Your petitioner further avers that it is necessary for your petitioner to see certain hospital records which pertain to the said Dr. Alfred G. Moses which are in the custody of the said Dr. J. S. Tarwater and also that it be necessary for the Doctors that your petitioner desires to examine Dr. Alfred G. Moses to see such rec-

ords. Your petitioner further avers that it is necessary for your petitioner to talk to and communicate with the said Dr. Alfred G. Moses. And, your petitioner further avers that it is necessary for other persons and physicians to talk to him and examine him in order to testify as to his condition upon the trial of this cause, and that it is necessary for physicians for the said Dr. Alfred G. Moses to examine the hospital records under the said Dr. J. S. Tarwater's custody, which pertain to the said Dr. Alfred G. Moses. Your petitioner further shows that this Honorable Court has jurisdiction of both the said Dr. Alfred G. Moses and the said Dr. J. S. Tarwater.

"The premises considered, your petitioner prays for the following relief to-wit: That Your Honor will issue an order directed to the said Dr. J. S. Tarwater, as manager of the Bryce Hospital, ordering him to allow your petitioner, and such other persons and doctors that your petitioner desires to examine, confer, or talk to the said Dr. Alfred G. Moses, and so frame your order as to require the said Dr. J. S. Tarwater to place the said Dr. Alfred G. Moses in a suitable place for consultation with parties who are allowed to examine him by the said petitioner. Your petitioner further prays that Your Honor will issue an order directed to the said Dr. J. S. Tarwater requiring him to place at the disposal of the petitioner and such other persons, and physicians that the petitioner directs, all of the hospial records which pertain to the said Dr. Alfred G. Moses, and that these records be placed in a suitable place for the examination of the aforementioned persons directed by the petitioner. Your petitioner further prays that Your Honor set the time and place that would be considered reasonable for such visits and examination of the aforementioned records."

The above stated facts were not controverted by the Superintendent of Bryce Hospital in his return. Nevertheless, Judge Wright overruled or ignored the motion.

There are statements in the printed brief filed by appellee and in argument by its counsel at the bar going to show that the petitioner was committed at the instance of his wife; that the petitioner is possessed of a valuable estate over which a guardian has been appointed, but as to whether such appointment was without notice and hearing, counsel for appellee declares he was not advised. If without notice and hearing the appointment of the guardian is void. Fowler v. Fowler, 219 Ala. 453, 122 So. 440; Fowler v. Fowler, 219 Ala. 457, 122 So. 444.

It further appears that on the trial of the habeas corpus proceedings, the appellant did not have the benefit of any medical testimony. The testimony which he did offer was confined to the testimony of two attendants and one outside witness, who had appeared in the ex parte hearing before Judge Leigh. These witnesses, however, testified that the petitioner (appellant) in their opinion was sane at the time of the trial. Although Dr. Moses who was in the custody of Dr. Tarwater did not take the stand to testify in his own behalf, nor was his guardian present to act for him, he was called as a witness by his custodian, the respondent, and examined before the Judge and jury. So far as appears from the record before us, this testimony was given without his consent.

It seems to be well settled that in cases involving the question of whether or not a citizen has been denied due process of law, the particular facts of each case must be considered. 6 R.C.L., §§ 430–432, pp. 433, 534; Barry v. Hall, 68 App.D.C. 350, 98 F. 2d 222.

It appears without dispute that the appellant here, the petitioner in the proceedings below, was committed to Bryce Hospital, an institution maintained by the State of Alabama for the confinement and treatment of insane persons, on an ex parte proceeding, as provided by §§ 208, 210, Title 45, Code of 1940. It further appears that petitioner is confined in said institution without being adjudged legally insane by a court of competent jurisdiction; that he was received in said institution as a "paying patient" for treatment and that such expenses are being paid for by his guardian,

out of his estate. It also appears that under the rules of said institution, if the facts stated in his motion are true, that the patients are held in said institution incommunicado and can be contacted only by obtaining the consent of the family. The petitioner, though request was made by his counsel, was denied the right to have medical witnesses, other than those selected by the Superintendent, who merely testified as to the result of consultations.

At the threshold of the case we are confronted with the fact that this controversy is between a private citizen and an agency of the State of Alabama. White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454.

In Zeigler v. South & North Alabama R. R. Co., 58 Ala. 594, Justice Stone observed: "Judge Cooley, in his work on Constitutional Limitations, quotes with commendation the powerful and lucid definition of the phrase, 'due process of law', as given by Mr. Webster in the great case of Dartmouth College v. Woodward, 4 Wheat. 518, 581, 4 L.Ed. 629, as follows: 'By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land. If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees, and forfeitures, in all possible forms, would be the law of the land. Such a strange construction would render constitutional provisions of the highest importance completely inoperative and void. * * * Judges would sit to execute legislative judgments and decrees; not to declare the law, or to administer the justice of the country.' In another place, during the same argument, speaking of the powers of the legislature, and their separation from the judicial functions of the

government, he said, 'It [the legislature] shall not judge by *act*; it shall not decide by *act*; it shall not deprive by *act*; but it shall leave all these things to be tried and adjudged by the law of the land.'"

This doctrine was reaffirmed in the following cases: The State v. Bush, 12 Ala. App. 309, 68 So. 492; Stoer v. Ocklawaha River Farms Co., 223 Ala. 690, 138 So. 270; Garrett v. Reid, 244 Ala. 254, 13 So.2d 97; Vernon v. State, 245 Ala. 633, 18 So.2d 388.

"Due process of law" means notice and opportunity to be heard and to defend before a competent tribunal vested with jurisdiction of the subject matter of the cause. Constitution of Alabama 1901; § 13; U.S. C.A.Const. Amend. 14. Alabama Alcoholic Beverage Control Board v. State ex rel. Krasner, 247 Ala. 469, 25 So.2d 30; Broadway v. Alabama Dry Dock & Shipbuilding Co., 246 Ala. 201, 20 So.2d 41; Constitution of 1901, §§ 6 and 13; 14th Amendment to the Constitution of the U. S. Due process of law is to secure the citizen against arbitrary action of those in authority, and to place him under the protection of the law. Bush Case, supra, 12 Ala.App. 309, 68 So. 492. This case was reaffirmed in Woodham v. State, 28 Ala.App. 62, 178 So. 464; James v. State, 28 Ala.App. 225, 181 So. 709; and see 2nd Mayfield's Digest, p. 732, paragraph 44; 28 Am.Jur. 676, § 32.

The able opinion by the U. S. Court of Appeals for the District of Columbia decided April 11, 1938, in the case of Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222, fully answers the argument of appellee that § 3, Title 15, Code of 1940, supplies due process of law in that it gives one confined in an insane hospital the right to apply for habeas corpus and have his sanity adjudicated. The court in the cited case overruled such contention and declares unsound the cases of In re Dowdell, Petitioner, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290, and Hammon v. Hill, D.C., 228 F. 999, by a District Court.

In the Dowdell case the court stated: "In the present case it must be assumed, from the petition, report, and argument, that the petitioner is in fact insane, and that the restraint and treatment of the hos-

pital are beneficial to him. The case therefore falls directly within the decisions cited." Thus, it is readily observed that that case condemns before hearing, on the assumption that the petitioner is insane. · In that case it was further stated: "The order of commitment settles nothing finally or conclusively against the person committed. It does not take from him the care or control of his property. It is not equivalent to the appointment of a guardian over him. * * *" . Notwithstanding this declaration, the petitioner had been deprived of his liberty, as in the case at bar, and was being deprived of his property, as in the case at bar where the petitioner is required to contribute to his own support and treatment in the hospital, pending his restraint under such commitment. See the authorities collated following the decision in the Dowdell case, supra, in 61 Am.St.Rep. p. 293, and especially the monographic note on "due process of law" as it relates to insane persons in State v. Billings, 55 Minn. 467, 57 N.W. 206, 43 Am.St.Rep. 525. Monographic Note, pp. 531, 541, wherein decisions prior to January 1894 are cited with statement of their substance. In the decisions noted, among others, is Underwood v. People, 32 Mich. 1, 20 Am.Rep. 633, decided while Judge Cooley was a member of the court and participating therein. In that case a defendant was acquitted on a trial for murder on a plea of insanity and a statute of that state authorizing the trial Judge to commit such person to a hospital for the insane was held to violate the law of the land and due process, under the constitution.

Section 204, Title 45, Code of 1940, provides that "The state hospitals shall be maintained and used solely for the care, treatment, and custody of such patients as have been committed to them as insane *by a proper court*. No other classes of patients shall be admitted." [Italics supplied.]

Section 207, Title 45, Code of 1940, provides that "Application in advance shall always be made by the court to ˙know whether there is room in the hospitals for the class of patient to be committed—giving answers to the prescribed interrogatories describing the case—and no patient shall be received into the hospital, who is not presented with a certificate *from a proper court committing him to the institution."* [Italics supplied.]

Section 208, Title 45, Code of 1940, provides the contents of the application for admission and Section 210 prescribes the form of certificate and further provides that, "When informed by the superintendent that the person can be received as a patient, the judge of probate shall examine witnesses, at least one of whom shall be a physician, and fully investigate the facts of the case, either with or without a jury, and either with or without the presence in court of the person, the grade of whose mental disqualification is under investigation, *according to his discretion*; and if the judge, or the jury, as the case may be, believe that the person is sufficiently defective mentally to be sent as a patient to a hospital for insane persons, the judge of probate shall make two copies of a certificate of mental disqualification, one copy of which shall be filed in his office and the other he shall send with the patient to the hospital; which certificate shall read substantially as follows: * * *." [Italics supplied.]

See exhibits to the Superintendent's return to the writ of habeas corpus set out above.

The appellee insists that under the provisions of § 3, Title 15, Code of 1940, any person confined as insane has the right to prosecute a writ of habeas corpus, as provided in this chapter, and if the judge or the jury when the petitioner demands trial by jury shall decide at a hearing that the person is insane, such decision does not bar a second application, alleging that such person has been restored to sanity. The appellee further contends that said section supplies all the elements of due process of law and gives the person so confined the right to have his sanity determined in a court of competent jurisdiction or before a judicial officer authorized to inquire into his commitment. In support of this insistence appellee relies on Dowdell, Petitioner, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290, and Hammon v. Hill, D.C., 228 F. 999. However as stated above the court pro-

nounced those decisions unsound and refused to follow them in Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

The Massachusetts statute, Pub.St. c. 87, §§ 40–44, authorized habeas corpus proceedings "upon the written application of any person, if it appears that the person so confined is not insane". 169 Mass. at page 388, 47 N.E. at page 1033.

The Pennsylvania statute, 50 P.S. § 592, upon which Hammon v. Hill, supra, was rested, provided that "on a written statement, properly sworn to or affirmed, being addressed *by some respectable person* to any law judge, that a person then confined in a hospital for the insane, is not insane," etc., a writ of habeas corpus will issue. 228 F. at page 1001.

Let us assume for the basis of discussion, that the petitioner Dr. Moses has been committed on the complaint of his wife, who is also his guardian, appointed without notice? Who, what "person" or what "respectable person", would interfere and finance litigation to seek his release, while his wife and guardian are content to allow him to remain in confinement? Said statute is a mere shadow and without legal efficacy to import due process of law and to declare it as "the law of the land", would be but a mockery.

Section 3, Title 15, Code of 1940, provides that, "Any person confined as insane may prosecute a writ of habeas corpus as provided in this chapter; * * *." Thus it may be observed that the application must be filed *by the person confined,* who, we may assume, is held incommunicado and cannot consult a lawyer and obtain his services. In the case of State v. Bush, 12 Ala.App. 309, 68 So. 492, the Court of Appeals of Alabama, among other things, said:

"The manifest purposes of the quoted constitutional provisions, where life, liberty, and property are affected, are to secure the citizen against the arbitrary action of those in authority, and to place him under the protection of the law. The expression 'due process of law' has been held to be the equivalent of 'the law of the land.' [13

Words and Phrases 536]; Missouri Pac. R. R. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463.

"'Whatever difficulty may be experienced in giving to these terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They * * * mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.' Pennoyer v. Neff, 95 U.S. [714] 733, 24 L.Ed. 565; 3 Words and Phrases, 2234, and authorities there cited; Ex parte MacDonald, 76 Ala. 603; Mead v. Larkin, 66 Ala. 87, 88; Zeigler v. S. & N. A. R. R. Co., 58 Ala. 594." [12 Ala.App. 311, 312, 68 So. 493.]

These pronouncements are but carrying forward the declaration of that great patriot Patrick Henry, "Give me liberty or give me death", the spark which lighted the torch of liberty that inspires our patriot sons and brothers—soldiers of this day and age—to defend our liberty and way of life at all costs, even the supreme sacrifice of life itself.

We recognize the fact that this is not a criminal prosecution, that the insane hospital is an institution of the state for the treatment of persons mentally ill. Nevertheless, confinement of insane persons where they are held incommunicado under the rules of the institution, except upon permission of members of the immediate family or of the superintendent, deprives such persons of their liberty as much as if they were incarcerated in a jail. Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

The statutes enacted by the legislature, some of which are hereinabove set out, provide the vehicle through which patients are received as inmates and patients into this state institution for the treatment and confinement of insane persons, state action; which clearly bring this case within the scope of the provisions of the Fourth and

Fourteenth Amendments to the Constitution of the United States, guaranteeing to the citizens of the state and of the United States the right to due process of law before their liberties are taken, as well as within the provisions of the Constitution of the State of Alabama. In the light of these constitutional provisions and the facts of this case, we are constrained to hold that §§ 208 and 210, Title 45, Code of 1940, are violative of the due process clauses of the State and Federal Constitutions. Clearly these statutes authorize ex parte examination without notice and a right to be heard, followed by forced confinement without the consent of the individual whose liberty is taken from him.

Nor does the verdict of the jury meet these requirements of the statute. It is expressed in the following words: "We, the jury, find the issues in favor of the defendant, and find that the plaintiff is sufficiently deficient or defective mentally to require *for his own welfare or for the welfare of others*, restraint, care and treatment and plaintiff not be discharged from Bryce Hospital." [Italics supplied.] This verdict does not meet the issues presented by the pleading,—the petition and the return to the writ. This same thing might be said of many people, who are not confined. It *does not affirm that the petitioner is insane.*

A verdict under the statute, Code of 1940, Title 15, § 3, must be responsive to the issues and to warrant further confinement, must find the petitioner to be "insane". In legal effect the only verdict authorized is that the petitioner is insane or is sane,— a special verdict which cannot be aided by intendment. Sewall, by His Next Friend, v. Glidden, 1 Ala. 52; Patterson v. United States, 2 Wheat. 221, 4 L.Ed. 224, 27 R.C.L. 882. As persuasive see Hearn v. United States Cast Iron Pipe & Foundry Co., 217 Ala. 352, 116 So. 365.

We may further observe for the sake of clarity that the power to grant and hear habeas corpus proceedings in this jurisdiction is conferred by the statute on Judges, not the court. §§ 6, 7 and 3, Title 15, Code of 1940. Said sections merely authorize the Judge on request of the petitioner to call a jury to pass on the facts and prescribe the issues and the verdict to be rendered and its effect. It is not res adjudicata. 25 Am. Jur. § 156, p. 250.

I am therefore of opinion that the appellant has been deprived of his liberty without due process of law. On the trial he was not given equal opportunity to present medical testimony to support his petition. The motion to set aside the verdict of the jury should have been granted.

I am therefore of opinion that the petitioner should be returned to Mobile County by the hospital authorities and appropriate proceedings be had in a court of competent jurisdiction in said county as provided by Article 2, Title 21, §§ 9–15, Code of 1940, within five days from the date the mandate issued by the clerk of this court. Otherwise the petitioner should be released and allowed to go hence. Barry v. Hall, supra. See Special Acts 1945, p. 704, Code Supplement, Tit. 21, § 12; Montgomery v. Montgomery, 236 Ala. 33, 180 So. 709.

I, therefore, respectfully dissent.