ON APPLICATION FOR REHEARING
The original opinion in this case, dated June 3, 1983, is withdrawn, and the following opinion is substituted therefor.
This appeal concerns the question of which party or parties should receive the balance of proceeds recovered from two wrongful death actions. Following a declaratory judgment in favor of the defendants, plaintiff appeals. We affirm in part, reverse in part, and remand.
This controversy involves only issues of law, and the following facts are undisputed.
On September 17, 1973, Elva Fulford and her daughter, Lou Anne Fulford Lowe, were involved in a one-car accident. As a proximate result of the accident, Elva Fulford died on September 17 and her daughter died three days later on September 20. Fulford was survived by her husband, Roy Fulford, and two daughters, Leah Fulford and Lou Anne Fulford Lowe. Lou Anne Fulford Lowe was survived by her husband, Roy Ronald Lowe, a sister, Leah Fulford, and her father, Roy Fulford.
For ease of discussion we refer to the two estates as the "Fulford Estate" and the "Lowe Estate." Roy Fulford was appointed administrator of the Fulford Estate, and Roy Ronald Lowe was appointed as administrator of the Lowe Estate.
Separate wrongful death actions were filed by the administrators against General Motors Corporation (GMC) in the Circuit Court of Tuscaloosa County in January 1974. These cases were removed to the United States District Court for the Northern District of Alabama and were consolidated for trial. A jury verdict was rendered in favor of each administrator against GMC. Later, GMC was granted a new trial, which resulted in a judgment in each case in favor of GMC. Following appeal by each administrator to the Fifth Circuit Court of Appeals, each case was reversed, and the original judgment reinstated, but the cases were remanded to the trial court. The trial court remitted the original jury verdict by fifty percent, and final judgments were entered against GMC and in favor of each administrator. Initial distributions, including cost of litigation and uncontested sums distributed to the surviving heirs, have been made and those payments are not contested here.
Roy Ronald Lowe, individually and as administrator of the Lowe Estate, filed a petition for declaratory judgment to determine who was entitled to the balance of the proceeds recovered in the two wrongful death actions. Generally the plaintiff claims he is entitled to all the Lowe Estate, of which he has already received one-half, and to one-fourth of the Fulford Estate. The Circuit Court of Tuscaloosa County ruled that defendant Leah Fulford was entitled to the balance of proceeds from the Fulford Estate and that defendants Roy Fulford and Leah Fulford were entitled to the balance of the Lowe Estate. The court further found that Roy Ronald Lowe had received all he was entitled to from the Lowe Estate and was not entitled to any of the proceeds at issue designated to the two estates.
The question for this Court to determine is who is entitled to the remaining one-fourth of the proceeds recovered from the wrongful death action allocated to the Fulford Estate and the remaining one-half of the proceeds recovered from the wrongful death action allocated to the Lowe Estate. No other monies are questioned by the plaintiff.
 The Fulford Estate
The plaintiff contends that he is entitled to the one-fourth of the proceeds designated to the Fulford Estate through Lou Anne Fulford Lowe. We agree with plaintiff's argument that at the time of Mrs. Fulford's death the heirs at law entitled to share in her inheritable estate included Lou Anne Lowe. Heirs are determined at the time of death. White v. Fowler, 245 Ala. 209, 16 So.2d 399 (1944). We cannot agree, however, that the Lowe Estate was entitled to receive any of the monies recovered in the wrongful death *Page 32 
action brought on behalf of Mrs. Fulford. Because Mrs. Lowe died some four months before the wrongful death action was filed and almost two years before the initial judgments were entered in June of 1975, she had no property right in the wrongful death cause of action. Mrs. Lowe's right was personal and ceased to exist upon her death.
We recognize that there are two lines of authority concerning whether the death of a beneficiary prior to the commencement of a wrongful death action forecloses recovery in favor of the beneficiary's estate. However, due to the punitive nature of the Alabama Wrongful Death Statute, we conclude that where a beneficiary dies prior to the commencement of an action, that beneficiary's estate is not entitled to any of the damages recovered. Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912
(1911), although not directly on point, provides guidance in this case. In Holt a man died leaving a widow and three children. While a wrongful death action was pending the widow remarried and subsequently died. Thereafter, damages were recovered and the second husband petitioned the court for one-half the proceeds as surviving spouse. The court rejected the petition, finding no property right in the wife. The court held:
 "The gist of the argument is that Mrs. Holt's interest in the cause of action arising out of the death of her first husband became a part of the property of her estate. . . . [W]e state our conclusion that the mere right to sue for damages
conferred by section 2486 of the Code, is not property, within the meaning of the statutes of distribution.
 ". . . It is also well settled that, in the absence of statutory provision, rights of action for torts purely personal do not survive, and are not assignable. — Weller v. Jersey City Railway Company, 68 N.J. Eq. 659, 61 A. 459; Id., 6 Am. 
Eng.Ann.Cas. 442. Scores of adjudicated cases might be cited to both these propositions. The right to prosecute an action for the wrongful death of his decedent is vested by the statute creating the right (Code, § 2486) in the personal representative for a definite legislative purpose, to prevent homicide. In prosecuting such action, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy, and upon recovery as a quasi trustee for those who stand in the relation of distributees to the estate strictly so called. — White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A. (N.S.) 568. And the right is vested in the personal representative alone. No one else, under any circumstances except in case of the death of a minor child, where section 2485 gives a preferred right to the father or mother, can maintain the action in any forum. The mere right of action is therefore nonassignable at law and in equity. The right of disposition is inherent in every notion of property. On these considerations of general law, we are of opinion that Mrs. Holt had no property right in the cause of action created by statute. Her right was personal merely.
 "Another consideration conduces to the same conclusion. By section 2 of the Code, `personal property' is defined to include `money, goods, chattels, things in action and evidences of debt, deeds and conveyances.' In a certain broad sense, `things in action' include demands in tort for injuries strictly personal. In a narrower sense, it includes only assignable rights of action, and this is the sense in which it is generally used. — Gibson v. Gibson, 43 Wis. 23, 28 Am.Rep. 527; People v. Tioga, 19 Wend. (N.Y.) 73. The words associated with `things of action' in the statutory definition indicate the legislative intention to use the term consonantly with its general use; that is, *Page 33 
in its more limited meaning. The context speaks of tangible subjects of property right and evidences of debt. There is also a significant collocation of things in action and evidences of debt. No debt arises out of tort in advance of judgment. . . .
 "Our conclusion is that, whatever may have been the case if judgment had been recovered prior to the death of Mrs. Holt, under the facts shown, the probate court correctly adjudged the appellant to be without right in the premises." (Emphasis added.) 174 Ala. at 215-217, 56 So. at 912.
Applying Holt to the present facts, there was not even so much as a pending action at the time of Mrs. Lowe's death; and judgment thereon was not recovered until May 1981. Mrs. Lowe, having died before the wrongful death action was reduced to judgment, had no property right in the potential wrongful death action on behalf of her mother. We affirm the trial court's holding that the plaintiff, Roy Ronald Lowe, individually, and as administrator of the estate of Lou Anne Lowe, deceased, is not entitled to share in the proceeds at issue designated to the Fulford Estate.
 The Lowe Estate
The proceeds recovered from the wrongful death action on behalf of Mrs. Lowe were designated to the Lowe Estate. On the basis of the statutory scheme for distribution of personalty to surviving spouses in effect at the time of Mrs. Lowe's death, September 20, 1973, plaintiff received one-half of the monies recovered. Code of 1975, § 43-3-12. In seeking to obtain the remaining one-half of the proceeds at issue before this Court, plaintiff contends that the statute of distribution in effect at the time of his wife's death should be declared unconstitutional on the grounds of impermissible gender-based discrimination in violation of the Fifth and Fourteenth amendments.
As stated in the trial court's order:
 "At the time of Mrs. Lowe's death on September 20, 1973, the Ala. Code, Title 16, §§ 10, 12 (1940, Recomp. 1958), subsequently Ala. Code, §§ 43-3-10, 43-3-12 (1975), set forth the statutory scheme for distribution of personalty to surviving spouses. Ala. Code, § 43-3-10 (1975), provided at that time that a widow, if there was no children, would receive all of the personal estate of her spouse upon his death. Ala. Code, § 43-3-12 (1975), provided at that time that a widower would receive one-half of the personal estate of his spouse upon her death."
Plaintiff contends that because the statute controlling at the time of his wife's death was unconstitutional he should be entitled to 100% of the proceeds recovered in the wrongful death action, just as his wife would have received 100% of his personalty if he had died with her surviving.
We agree with the trial court's order as to the following:
 "Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds. White v. U.S. Pipe Foundry Co., 646 F.2d 203 (5th Cir. 1981). Courts will inquire into the constitutionality of a statute only when and to the extent that the case before the court requires. Steward Machine Co. v. Davis, 89 F.2d 207 (5th Cir. 1937), aff'd, 301 U.S. [548], 558 [57 S.Ct. 883, 81 L.Ed. 1279]. A court has a duty to avoid constitutional questions unless essential to the proper disposition of the case. Doughty v. Tarwater, 261 Ala. 263, 73 So.2d 540 (1954); Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757 (1952); Lee v. Macon Co. Board of Education, 231 F. Supp. 743
(M.D.Ala. 1964).
 "No matter how much the parties may desire adjudication of important questions of constitutional law, broad considerations of the appropriate exercise of judicial power prevents such determinations unless actually compelled by the litigation before the court. Troy State University v. Dickey, 402 F.2d 515
(5th Cir. 1968). Legislative enactments will be assumed to be valid until assailed by *Page 34 
someone injuriously affected thereby. State v. Montgomery, 177 Ala. 212, 59 So. 294 (1912).
". . . .
 "If a statute is declared unconstitutional on the grounds of denial of equal protection due to different treatment being discriminatorily accorded such as through underinclusiveness, a court may satisfy the Constitution's commands by either extending benefits to those excluded from the scope of . . . its coverage or by invalidation of the statute in its entirety. Ransom v. Ransom, 401 So.2d 746 (Ala. 1981). There the Alabama Supreme Court, just as the Court of Civil Appeals in Orr v. Orr, 374 So.2d 895 (Ala.Civ.App. 1979), decided to breathe constitutionality [sic] validity into the act in question to effectuate the legislative intent. . . ."
In holding that the plaintiff was entitled to one-half the Lowe Estate, the trial court's order enacted in February 1982 manifests that he applied the wording of Code of 1975, § 43-3-10, as amended, Acts 1981, 1st Ex.Sess., No. 81-967,[1]
effective August 20, 1981, which reads as follows:
 "The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as real estate, and according to the same rules; if a spouse having a separate estate dies intestate, leaving a spouse living, the surviving spouse is entitled to one half of the personalty of such separate estate absolutely and to the use of the realty during his or her lifetime."
Unfortunately, the trial court considered this as the latest amendment to Code of 1975, § 43-3-10. In fact the statute was amended by Acts 1981, 3rd Ex.Sess., No. 81-1170.[2] The second 1981 amendment, approved November 30, 1981, effective retroactively as of 9:30 a.m., August 20, 1981, rewrote § 43-3-10 to read as follows:
 "The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as real estate, and according to the same rules; except that in any event the surviving spouse is entitled to no less than one half of the personalty of such separate estate absolutely."
It is clear from the record that this change in the law was neither comprehended by the trial court nor brought to its attention by the attorneys. Nevertheless, at the time the trial court's order was entered the law did allow the surviving spouse, in this case the husband, a minimum of one-half the remaining personalty after the payment of debts and charges against the estate.
Contrary to the trial court's conclusion, Code of 1975, § 43-3-10, had in fact been amended three times. The most recent pronouncement of legislative intent for § 43-3-10, as of the date of judgment, was found in Act 81-1170,[3] and it supported appellant's contention that he was entitled to 100% of the proceeds recovered in the wrongful death action on behalf of his wife. The latest legislative effort in § 43-3-10 as of the date of judgment stated that the surviving spouse was entitled to no less than one-half of the personalty and also stated that "[t]he personal estate of persons dying intestate as to such estate . . . is to be distributed in the same manner as real estate, and according to the same rules." Reading § 43-3-10 inpari materia with § 43-3-1, which provided for the descent and distribution of real estate of an intestate, leads us to conclude that the legislature intended that a surviving spouse receive all the personalty when *Page 35 
there were no children. Section 43-3-1 read in pertinent part:
 "The real estate of persons dying intestate, as to such estate descends, subject to the payment of debts and charges against the estate as follows:
". . . .
 "(2) If there are no children or their descendants then the whole to the surviving spouse of the intestate."
To summarize, Mrs. Lowe died September 20, 1973, and at that time §§ 43-3-10 and 43-3-12 provided the statutory scheme for distribution of personalty to surviving spouses. Under § 43-3-12, Mr. Lowe received one-half of the proceeds recovered in the wrongful death action on behalf of his deceased wife. On August 20, 1981, the legislature amended § 43-3-1 and § 43-3-10, and repealed completely § 43-3-12 by Act 81-967. Later, on November 30, 1981, Act 81-967 was amended and superseded by Act 81-1170, effective retroactively as of August 20, 1981. The only difference in these two acts was in the rewording of § 43-3-10. Construing § 43-3-10, as it read at the date of judgment, in pari materia with § 43-3-1, we conclude that it was the intent of the legislature that when there were no surviving children the surviving spouse, here Mr. Lowe, was to receive 100% of the personalty absolutely. Therefore, regarding the balance of the proceeds designated to the Lowe Estate, we must reverse the judgment and remand this case for further proceedings in accord with this opinion.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All Justices concur in the granting of rehearing; all Justices concur in the opinion as it relates to the Fulford Estate except JONES and ADAMS, JJ., who dissent; all Justices concur in the opinion as it relates to the Lowe Estate, except TORBERT, C.J., and JONES and FAULKNER, JJ., who concur in the result.
JONES, J., writes separately in dissent as to the Fulford Estate, joined by ADAMS, J., and to concur in the result as to the Lowe Estate, joined by TORBERT, C.J., and FAULKNER, J.
[1] We note that Act 81-967 also repealed § 43-3-12, which relates to the husband's distributive share of the wife's estate. Further, § 43-3-1, which provides for the descent and distribution of realty, was amended by this Act.
[2] When Act 81-967 was amended and superseded by Act 81-1170, the only change was the rewording of § 43-3-10.
[3] We note that §§ 43-3-1 through 43-3-12 have now been repealed by Acts 1982, No. 82-399, § 8-102, effective January 1, 1983.