71 So.3d 712 (2011)
Ex parte K.S.
(In re K.S.
v.
Lee County Department of Human Resources).
2091140.
Court of Civil Appeals of Alabama.
April 15, 2011.
*713 Melissa S. Gowan, Opelika, for petitioner.
Sharon E. Ficquette, gen. counsel, and Michael A. Nunnelley, staff atty., Department of Human Resources, for respondent.
THOMAS, Judge.
K.S. ("the mother") appeals from an order entered by the Lee Juvenile Court following a dependency-review hearing insofar as it ordered her to complete a program at a voluntary, residential women's shelter.
The Lee County Department of Human Resources ("DHR") became involved with the mother and her child in March 2010. At that time, DHR filed a dependency petition in the juvenile court alleging that the mother had neglected the child's medical needs and that the mother was unable to care for the child's medical needs. After holding a hearing on April 7, 2010, the juvenile court entered an order finding the child dependent and awarding custody of the child to DHR. The juvenile court also ordered the mother to obtain employment, to prepare a budget, to attend parenting classes, to continue working on her GED, to remain alcohol and drug free, to sign certain medical releases, and to provide DHR with the names and addresses of relatives that could care for the child.
On August 17, 2010, the juvenile court held a review hearing. At the hearing, Keitha Dirck, a DHR social worker, testified that DHR had assisted the mother in entering Mary's Shelter ("the shelter"), a residential women's shelter. Dirck explained that the shelter would provide the mother with support, help her to obtain her GED, and help her to obtain stability. Dirck testified that the mother had entered the shelter on August 2, 2010. Dirck stated that DHR recommended that the mother remain at the shelter, undergo a mental-health evaluation, participate in parenting classes, and continue to work towards obtaining her GED. Dirck further testified that DHR was willing to provide transportation for the mother to allow her to have weekly, supervised visitation with the child. The mother's counsel did not question DHR regarding its recommendation that the mother remain at the shelter.
The mother testified that she had recently entered the shelter and that she had started working on obtaining her GED, that she had applied for food stamps, and that she had begun attending parenting classes. The mother further testified that she was six months' pregnant and that she had attended all of her prenatal-care appointments. According to the mother, she intended to remain at the shelter, stating that the shelter had a transitional-living program to help her to be able to live on her own. The mother stated that she would begin the transitional-living program at the shelter once her baby was born. The mother's counsel presented to *714 the juvenile court pictures of the shelter and information regarding the services offered by the shelter.
At the close of the hearing, the juvenile court judge announced his intention to order the mother, among other things, to complete the program at the shelter and to follow the rules and regulations of the shelter. Neither the mother nor her counsel expressed any disagreement or objection to the juvenile court's proposed order. The juvenile court entered an order on August 18, 2010, finding that the child remained dependent and ordering the mother, among other things, to complete the program at the shelter and to follow the rules and regulations of the shelter.
On August 24, 2010, the mother filed a motion seeking reconsideration of the juvenile court's order, alleging that the mother could obtain the same services offered by the shelter from family members. The mother further alleged that she could complete the DHR-requested programs more quickly with the assistance of family members than she could through the shelter. The mother additionally argued that the juvenile court's order requiring her to remain at the shelter was "the equivalent of a civil commitment and a violation of the mother's due process rights." The juvenile court denied the mother's motion, and the mother subsequently appealed to this court.
Although neither party has raised the issue of this court's jurisdiction over this appeal, jurisdictional matters are of such importance that we may raise them ex mero motu. See Ruzic v. State ex rel. Thornton, 866 So.2d 564, 568-69 (Ala.Civ. App.2003), abrogated on other grounds by F.G. v. State Dep't of Human Res., 988 So.2d 555 (Ala.Civ.App.2007). Subject to certain exceptions not relevant in this case, an appeal lies only from a final judgment. § 12-22-2, Ala.Code 1975; Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990). "`[A] final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been complete adjudication of all matters in controversy between the litigants within the cognizance of that court.'" Dabbs v. Four Tees, Inc., 984 So.2d 454, 456 (Ala.Civ.App.2007) (quoting Jewell v. Jackson & Whitsitt Cotton Co., 331 So.2d 623, 625 (Ala.1976)). "`[T]he test of a judgment's finality is whether it sufficiently ascertains and declares the rights of the parties.'" Coosa Valley Health Care v. Johnson, 961 So.2d 903, 905 (Ala.Civ.App.2007) (quoting Ex parte DCH Reg'l Med. Ctr., 571 So.2d 1162, 1164 (Ala.Civ.App.1990)).
This court has held that a "formal determination by a juvenile court of a child's dependency coupled with an award of custody incident to that determination will give rise to an appealable final judgment even if the custody award is denominated as a `temporary' award and further review of the case is envisioned." J.J. v. J.H.W., 27 So.3d 519, 522 (Ala.Civ.App.2008). See also C.L. v. D.H., 916 So.2d 622 (Ala.Civ. App.2005) (holding that a judgment was final when the juvenile court awarded custody of the child to the maternal grandmother, even though the court had set a future, review hearing); E.D. v. Madison County Dep't of Human Res., 68 So.3d 163, 167 (Ala.Civ.App.2010) (plurality opinion) (holding that a judgment was final when the juvenile court ordered that legal custody would remain with the Madison County DHR but changed the physical custody of the child from the Madison County DHR to the mother).
In this case, the juvenile court determined that the child remained dependent and it ordered that custody of the child remain with DHR. Neither the mother nor DHR had made any request to the juvenile court to alter the disposition of the child, and the mother made no challenge *715 with regard to the dependency of the child. Because a change in the disposition of the child was not at issue, the juvenile court's order was not a final, appealable judgment.
Although we have concluded that the mother's appeal was from a nonfinal judgment, this court has the discretion to treat an appeal from an interlocutory order as a petition for a writ of mandamus. See E.E.K. v. Jefferson County Dep't of Human Res., 976 So.2d 1021, 1024 (Ala. Civ.App.2007). Therefore, exercising that discretion, we treat the mother's appeal as a petition for the writ of mandamus and consider the merits of the mother's arguments.
"Mandamus is an extraordinary remedy. An appellate court will grant a petition for a writ of mandamus only when `(1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked.' Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000) (citing Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala.1997))."
Ex parte Amerigas, 855 So.2d 544, 546 (Ala.Civ.App.2003).
The mother argues that the juvenile court denied the mother her constitutional due-process rights when it ordered her to remain in and to complete the program at the shelter because, the mother argues, the order was tantamount to a civil commitment. At the hearing, the mother testified that she intended to remain at the shelter and to complete the programs offered by the shelter. DHR also recommended that the mother remain at the shelter. Thus, the portion of the juvenile court's order stating that the mother should remain at the shelter and complete the programs it offered to the mother merely memorialized the mother's stated intentions and DHR's recommendation. Moreover, the mother did not object when the juvenile court stated at the hearing its intention to require the mother to remain at the shelter.
"The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. `A party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled the trial court."' Atkins v. Lee, 603 So.2d 937, 945 (Ala. 1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)). `That doctrine [of invited error] provides that a party may not complain of error into which he has led the court.' Ex parte King, 643 So.2d 1364, 1366 (Ala.1993). `A party cannot win a reversal on an error that party has invited the trial court to commit.' Neal v. Neal, 856 So.2d 766, 784 (Ala.2002)."
Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala.2003). Because the mother testified that she intended to remain at the shelter and did not object when the juvenile court announced that it intended to include such a requirement in its order, the mother led the court into what she now argues was error. Therefore, the mother's argument fails to demonstrate that she has a clear legal right to the relief that she seeks.
Moreover, the mother's argument in her motion seeking reconsideration of the juvenile court's order was based, in part, on factual allegations that she could obtain through family members the same services that she would receive at the shelterevidence that was not presented at the hearing. Thus, the factual allegations in the mother's motion constitute new evidence, which cannot serve as the basis for *716 relief from the juvenile court's order. See Bates v. State, 503 So.2d 856, 858 (Ala.Civ. App.1987) (stating that no postjudgment "relief is granted when the new evidence comes into being following the conclusion of the trial").
Because the mother invited the action that she argues was error, and because the factual allegations in the mother's motion seeking reconsideration of the juvenile court's order represent new evidence not presented at trial, the mother has not shown that she has a clear legal right to relief, and her petition for a writ of mandamus is, therefore, due to be denied.
PETITION DENIED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., dissents, with writing.
MOORE, Judge, dissenting.
Although I agree that this court has the discretion to treat appeals as petitions for a writ of mandamus, I believe we should not do so in this case.
Our supreme court has explained:
"`"A court has a duty to avoid constitutional questions unless essential to the proper disposition of the case."' Lowe v. Fulford, 442 So.2d 29, 33 (Ala.1983) (quoting trial court's order citing Doughty v. Tarwater, 261 Ala. 263, 73 So.2d 540 (1954); Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757 (1952); and Lee v. Macon County Bd. of Educ., 231 F.Supp. 743 (M.D.Ala.1964)). `"Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds."' Lowe, 442 So.2d at 33 (quoting trial court's order citing White v. U.S. Pipe & Foundry Co., 646 F.2d 203 (5th Cir. 1981)). `"No matter how much the parties may desire adjudication of important questions of constitutional law, broad considerations of the appropriate exercise of judicial power prevent[] such determinations unless actually compelled by the litigation before the court."' Lowe, 442 So.2d at 33 (quoting trial court's order citing Troy State Univ. v. Dickey, 402 F.2d 515 (5th Cir. 1968))."
Chism v. Jefferson County, 954 So.2d 1058, 1063 (Ala.2006).
This case presents a constitutional question whether a juvenile court can order a parent to reside in a certain facility while undergoing rehabilitation aimed at reunifying that parent with a dependent child. The main opinion disposes of that question by concluding that K.S. ("the mother") invited the juvenile court to enter an order requiring her to live at Mary's Shelter ("the shelter") by testifying that she intended to complete its program and by failing to object when the juvenile court stated its intention to enter an order requiring her to complete that program. I disagree with any implication that a parent who states an intention to reside at a certain place during a rehabilitation period thereby consents to a court order preventing the parent from residing elsewhere. I also question whether the mother waived the constitutional issue by failing to object to the juvenile court's oral pronouncement of its intended ruling at the end of the hearing because our caselaw holds that such statements have no legal effect. See Hayes v. Hayes, 16 So.3d 117, 120 (Ala. Civ.App.2009) (quoting Armstrong v. Armstrong, 550 So.2d 1017, 1018 (Ala.Civ.App. 1989), citing in turn Hobbs v. Hobbs, 423 So.2d 878 (Ala.Civ.App.1982)) ("`a trial court's oral divorce decree is unauthorized and ineffective'"). Finally, I believe the mother's constitutional challenge survives even though she also argues that the restriction should be lifted based on new evidence that she could obtain the same services elsewhere. Hence, I cannot concur in the manner in which the main opinion *717 avoids the constitutional issue and resolves what the majority treats as the mother's petition for a writ of mandamus.
That said, because the issue does raise serious concerns regarding the power of juvenile courts to restrict the residency of parents of dependent children during a rehabilitation period, I believe this court should insist that those concerns be presented through the proper vehicle. The mother failed to file a petition for a writ of mandamus, which would have allowed the juvenile court to file an answer presenting its justification for entering the judgment and its reason for denying the mother's constitutional objection to the same. This court has been deprived of that information because of the incorrect manner in which the mother elected to proceed. Those considerations, along with the general disinclination to address constitutional issues, compel me to conclude that we should not exercise our discretion to consider this appeal as a petition for a writ of mandamus. Therefore, I respectfully dissent.