THOMAS, Judge.
S.D. (“the mother”) appeals from a judgment of the Shelby Juvenile Court terminating her parental rights to L.A. (“the child”). We affirm.
On May 24, 2004, the mother pleaded guilty to allowing her children to be used in the production of pornographic material and to production of pornographic material involving a minor child. The first statute that the mother was convicted of violating was § 13A-12-196, Ala.Code 1975, which, at the time of the mother’s conviction, provided:
“Any parent or guardian who knowingly permits or allows their child, ward, or dependent under the age of 17 years to engage in the production of any obscene matter containing a visual reproduction of such child, ward, or dependent under the age of 17 years engaged in any act of sado-masochistic abuse, sexual excitement, masturbation, breast nudity, genital nudity, or other sexual conduct shall be guilty of a Class A felony.”
The second statute that the mother was convicted of violating was § 13A-12-197, Ala.Code 1975, which, at the time of the mother’s conviction, provided:
“Any person who knowingly films, prints, records, photographs or otherwise produces any obscene matter that contains a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, breast nudity, genital nudity, or other sexual conduct shall be guilty of a Class A felony.”
The victims of the mother’s crime were her two older children, who are half sisters to the child; the child had not been born at the time of the mother’s convictions. The mother was sentenced to 10 years in prison for each offense, with the sentences running concurrently. The mother’s sentences were split; the mother was ordered to spend 2 years in prison with the remainder of the 10-year sentences suspended provided that the mother successfully completed 3 years of probation. The mother was also ordered to attend a sexual-health clinic at the University of Alabama at Birmingham upon her release from prison.
The mother’s convictions for the offenses listed in § 13A-12-196 and § 13A-12-197 subjected her to the Community Notification Act, codified at § 15-20-20 et seq., Ala.Code 1975 (“the CNA”). One of the requirements of the CNA is that the mother notify law enforcement of her residence. The mother failed to comply with this requirement and, in 2008, was convicted of violating the notice provisions of the CNA, a Class C felony. The mother was given a five-year suspended sentence and placed on probation for five years.
The CNA also bars the mother from residing with a child. Section 15-20-26(c), Ala.Code 1975, provides, in pertinent part:
“No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, unless one of the following conditions applies:
[[Image here]]
*607 “(2) The adult criminal sex offender has been convicted of any criminal sex offense in which any of the offender’s minor children, grandchildren, or stepchildren were the victim.”
In this case, the mother was an adult at the time of her crimes, classifying her as an adult criminal sex offender under the CNA, and her victims were her minor children. Thus, the CNA prohibits the mother from establishing a residence with a minor, including her own children. As a result of the mother’s convictions, the mother’s two older children, the half sisters of the child, were removed from the mother’s care; one child was placed in the custody of her father, and the other child was placed in the custody of the mother’s brother.
The child was born on May 27, 2008. In July 2008, the Shelby County Department of Human Resources (“DHR”) became aware that the child was living with the mother; it then removed the child from the mother’s care. The juvenile court adjudicated the child dependent in February 2009, ordered that the mother not have any contact with the child, and determined that DHR was not required to make reasonable efforts to reunite the mother and the child.
On October 20, 2009, DHR filed a petition to terminate the mother’s parental rights.[1] In its petition, DHR alleged that the mother’s conduct and condition was such as to render her unable to care for the child. Specifically, DHR alleged that the mother had
“placed the child in clear and present danger of being tortured, abused, cruelly beaten or otherwise maltreated as evidenced by the treatment of a sibling or siblings, to wit[:] on or about May 24, 2004, [the mother] was convicted of violating § 13A-12-196, Code of Alabama (1975), Parents or guardians permitting children to engage in production of obscene matter, and § 13A-12-197, Code of Alabama (1975), Production of obscene matter containing visual depiction of a person under 17 years of age involved in obscene acts, where the victims of said crimes were the children of [the mother] and the siblings of [the child.] As such, [the mother] is a Registered Sex Offender and is prohibited from establishing a residence with [the child] pursuant to § 15-20-26(e)(2), Code of Alabama (1975). Furthermore, [the mother] has failed to provide stable housing and maintain stable employment, has a history of neglect and/or abuse of children and has further failed to provide for the material needs of said child.”
DHR also alleged that, because the mother was a registered sex offender and was prohibited by the CNA from establishing a residence with the child, it was not required to make reasonable efforts to reunite the mother and the child. DHR further alleged that no suitable relative resources were available for the placement of the child.
In response to DHR’s petition, the mother filed a notice that she intended to challenge the constitutionality of the CNA as it applies to her; the mother served the attorney general with her notice. The mother alleged that the CNA was vague and ambiguous, that it deprived her of due process, that it denied her equal protection, and that it violated her constitutionally protected right to the care, custody, and control of her child. The mother further *608 alleged that the CNA effected a statutory per se termination of her parental rights, in violation of the separation-of-powers doctrine. The mother also filed a “motion for directed verdict or, in the alternative, [a] motion to dismiss,” which was in essence a motion for a summary judgment, based on the same grounds. The attorney general filed a response in opposition to the mother’s motion, denying that the CNA was unconstitutional.
Before ruling on the mother’s motion, the juvenile court held a trial on DHR’s petition to terminate the mother’s parental rights on March 26, 2010. The only witness who testified at the trial was LaBrena Friend, the DHR caseworker assigned to the case. The mother was present at the trial; however, she did not testify. On April 22, 2010, the juvenile court held a hearing on the mother’s motion challenging the constitutionality of the CNA as it applies to her. On January 3, 2011, the juvenile court entered a judgment terminating the mother’s and the father’s parental rights. On the same date, it entered an order determining that the CNA is not unconstitutional as it applies to the mother and denying her motion for a summary judgment.
The mother filed a postjudgment motion on January 14, 2011. While her post-judgment motion was pending, the mother filed a supplemental postjudgment motion, arguing for the first time that placement of the child with the child’s half sister, T.C., was a viable alternative to the termination of the mother’s parental rights. The mother’s postjudgment motion was denied by operation of law, and the mother timely appealed to this court.
On appeal, the mother first argues that the CNA is unconstitutional as it applies to her because, the mother argues, it effects a per se statutory termination of her parental rights on a basis other than the grounds for termination of parental rights provided in § 12-15-319, Ala.Code 1975. However, reviewing the facts of this case, we determine that the juvenile court had sufficient bases to terminate the mother’s parental rights pursuant to the grounds listed in § 12-15-319; therefore, because the juvenile court could have terminated the mother’s parental rights absent the provisions of the CNA, we need not reach the constitutional issue raised by the mother. As the Alabama Supreme Court has held:
“ ‘ “A court has a duty to avoid constitutional questions unless essential to the proper disposition of the case.” ’ Lowe v. Fulford, 442 So.2d 29, 33 (Ala.1983) (quoting trial court’s order citing Doughty v. Tarwater, 261 Ala. 263, 73 So.2d 540 (1954); Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757 (1952); and Lee v. Macon County Bd. of Educ., 231 F.Supp. 743 (M.D.Ala.1964)). ‘“Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds.” ’ Lowe, 442 So.2d at 33 (quoting trial court’s order citing White v. U.S. Pipe & Foundry Co., 646 F.2d 203 (5th Cir.1981)). ‘ “No matter how much the parties may desire adjudication of important questions of constitutional law, broad considerations of the appropriate exercise of judicial power prevent[ ] such determinations unless actually compelled by the litigation before the court.” ’ Lowe, 442 So.2d at 33 (quoting trial court’s order citing Troy State Univ. v. Dickey, 402 F.2d 515 (5th Cir.1968)).”
Chism v. Jefferson Cnty., 954 So.2d 1058, 1063 (Ala.2006).
Section 12-15-319 provides, in part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, *609 that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by the treatment of a sibling.
“(4) Conviction of and imprisonment for a felony.”
Section 12-15-301(2), Ala.Code 1975, defines abuse as:
“Harm or the risk of harm to the emotional, physical health, or welfare of a child. Harm or the risk of harm to the emotional, physical health, or welfare of a child can occur through nonaccidental physical or mental injury, sexual abuse, or attempted sexual abuse or sexual exploitation or attempted sexual exploitation.”
In turn, § 12-15-301(12) defines sexual abuse:
“Sexual abuse includes the employment, use, persuasion, inducement, enticement, or coercion of any child to engage in, or having a child assist any person to engage in, any sexually explicit conduct or any simulation of the conduct for the purpose of producing any visual depiction of the conduct. Sexual abuse also includes rape, molestation, prostitution, or other forms of sexual exploitation or abuse of children, or incest with children, as those acts are defined in this article or by Alabama law.”
Sexual exploitation is defined by § 12-15-301(13) thusly:
“Sexual exploitation includes allowing, permitting, or encouraging a child to engage in prostitution and allowing, permitting, encouraging, or engaging in the obscene or pornographic photographing, filming, or depicting of a child.”
The mother’s conviction for allowing her children to be used in the production of obscene, pornographic materials and her conviction for production of obscene, pornographic materials involving her children meet the definitions of sexual abuse and sexual exploitation under § 12-15-301; therefore, her convictions also fall under the definition of abuse as defined by that section. The evidence is also clear that the mother’s convictions were for felonies and that the mother was imprisoned as a result of her convictions. Thus, the juvenile court had before it clear and convincing evidence, i.e., evidence of the mother’s convictions, sufficient for it to determine that the mother had been convicted of and imprisoned for felonies and that the child was in danger of being abused, as evidenced by the mother’s treatment of the child’s half siblings. Because these determinations are sufficient to support a determination that grounds existed to terminate the mother’s parental rights to the child under § 12-15-319(a), we need not address whether the CNA provides further grounds to support termination or whether the CNA is unconstitutional as it applies to the mother.
*610 The mother next argues that the juvenile court erred in terminating her parental rights because, she says, placement of the child with T.C. was a viable alternative to the termination of the mother’s parental rights.[2] According to Friend, the mother provided DHR with the names of six relatives who possibly could serve as relative placements for the child. T.C. was not among the names provided to DHR by the mother. Additionally, the mother did not raise the possibility of T.C.’s serving as a relative placement at the trial on DHR’s termination petition. Instead, the mother raised this argument for the first time in her postjudgment motion. We have held that,
“ ‘[although DHR has a responsibility to investigate alternate relative placements for a child, that obligation does not entirely alleviate the responsibility of the parent who purports to oppose the termination of his or her parental rights of making DHR social workers aware of alternative placement possibilities.’ ”
J.F.S. III v. Mobile Cnty. Dep’t of Human Res., 38 So.3d 75, 78 (Ala.Civ.App.2009)(quoting B.S. v. Cullman Cnty. Dep’t of Human Res., 865 So.2d 1188, 1197 (Ala.Civ.App.2003)). Because the mother did not provide DHR with any information concerning T.C.’s possibly serving as a relative resource until after the juvenile court had entered its judgment terminating her parental rights, we cannot hold the juvenile court in error for determining that there were no viable alternative to the termination of the mother’s parental rights. See J.F.S. III, 38 So.3d at 78-79.
Because the mother has failed to show any error by the juvenile court in terminating her parental rights, we affirm the judgment of the juvenile court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. DHR also petitioned the juvenile court to terminate the parental rights of B.T. ("the father”). The juvenile court terminated the father’s parental rights; the father has not appealed from the judgment.

. T.C. was removed from the mother’s care after the mother’s convictions in 2004; T.C. was a victim of those crimes. T.C. turned 19 years old 2 weeks before the juvenile court held a trial on DHR's termination petition.